## SCHIGUR v SECRETARY OF STATE

1. STATUTES—COURTS—OBVIOUS MEANINGS—STATUTORY LANGUAGE—AMBIGUITIES.

   The courts may not disturb the obvious meaning of a statute where the statutory language is clear and there is no ambiguity.

2. AUTOMOBILES—PEDESTRIANS—HIT-AND-RUN DRIVERS—PAIN AND SUFFERING—MOTOR VEHICLE ACCIDENT CLAIMS FUND—INSURANCE—NO-FAULT ACT.

   A plaintiff pedestrian who was injured by a hit-and-run driver may not recover damages for pain and suffering from the Motor Vehicle Accident Claims Fund where the plaintiff was entitled to benefits "in part" under the no-fault automobile insurance statute since the legislative intent in enacting the no-fault legislation was to phase the fund out of existence and replace it with various remedies available under the no-fault act.

3. STATUTES—CONSTITUTIONAL LAW—PRESUMPTION OF VALIDITY—BURDEN OF REBUTTING PRESUMPTION.

   Statutes are cloaked with a presumption of constitutional validity and a person challenging a statute has the burden of rebutting that presumption.

4. CONSTITUTIONAL LAW—EQUAL PROTECTION—"STRICT SCRUTINY" TEST—"TRADITIONAL" TEST.

   The United States Supreme Court has historically employed two equal protection tests: (1) a "strict scrutiny" test which requires the state to show a compelling interest which justifies the classification, and (2) a "traditional" test which requires the

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Statutes § 194.

[2, 5, 6] Am Jur 2d, New Topic Service, No-Fault Insurance §§ 1, 26.

[3] 73 Am Jur 2d, Statutes §§ 103, 123.

[4, 5, 6] 16 Am Jur 2d, Constitutional Law § 485 *et seq.*

　73 Am Jur 2d, Statutes § 41.

[7] 7 Am Jur 2d, Automobile Insurance §§ 135–138.

　7 Am Jur 2d, Automobiles and Highway Traffic §§ 301, 302.

person challenging the classification to show that it is without reasonable justification.

5. CONSTITUTIONAL LAW—EQUAL PROTECTION—NO-FAULT LEGISLATION —TRADITIONAL TEST.

The no-fault insurance legislation is still in the experimental stage and the traditional equal protection test should be applied in cases challenging its validity under the equal protection clause (US Const, Am XIV; Const 1963; art 1, § 2).

6. STATUTES—CONSTITUTIONAL LAW—AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS FUND—INSURANCE—NO FAULT.

A statute which prevents recovery from the Motor Vehicle Accident Claims Fund where damages are covered in whole or in part by the no-fault act has two purposes: (1) to prevent duplicate recoveries for damages, and (2) to prevent a potentially unlimited drain on state revenues; either purpose is valid for purposes of the equal protection clauses (US Const, Am XIV; Const 1963, art 1, § 2, MCLA 257.1105; MSA 9.2805).

7. CONSTITUTIONAL LAW—DEFENDANT OF LAST RESORT—AUTOMOBILES —HIT-AND-RUN DRIVERS—NONECONOMIC LOSSES.

The state is not constitutionally required to serve as a defendant of last resort in order that an injured plaintiff may recover for noneconomic losses where the plaintiff is unable to determine the identity of a hit-and-run driver who caused the plaintiff's injuries.

Appeal from Wayne, Richard D. Dunn, J. Submitted November 9, 1976, at Detroit. (Docket No. 27218.) Decided January 6, 1977.

Complaint by Melvin D. Schigur against the Secretary of State to recover damages from the Motor Vehicle Accident Claims Fund for personal injuries suffered by plaintiff, while a pedestrian, as a victim of a hit-and-run driver. Accelerated judgment for defendant. Plaintiff appeals. Affirmed.

*Moore, Barr & Kerwin,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Joseph B. Bilitzke,*

and *Carl K. Carlsen,* Assistants Attorney General, for defendant.

Before: ALLEN, P. J., and T. M. BURNS and BEASLEY, JJ.

ALLEN, P. J. On May 18, 1975, while a pedestrian, the plaintiff was struck and injured by an unidentified hit-and-run driver in a 1967 Ford automobile. No one in the plaintiff's household owned a car. Consequently, no one in his household had purchased a no-fault insurance policy. The absence of insurance is only marginally relevant (see fn 4, *infra*). The plaintiff's major problem is his inability to find anyone to sue for pain and suffering damages. He is now attempting to recover those damages from the Motor Vehicle Accident Claims Fund (the Fund) established by MCLA 257.1101 *et seq.;* MSA 9.2801 *et seq.* This appeal is from the trial court's grant of the defendant's motion for accelerated judgment.[1]

Plaintiff sued the Fund under MCLA 257.1112; MSA 9.2812 which provides:

"Where the death of or personal injury to any person is occasioned in this state by a motor vehicle but the identity of the motor vehicle and of the driver and owner thereof cannot be established, any person who would have a cause of action against the owner or driver in respect to the death or personal injury may bring an action against [the Fund]."

At least prior to October 1, 1973, persons could sue the Fund for damages up to the statutory maximum of $20,000. MCLA 257.1123; MSA 9.2823. On October 1, 1973, 1972 PA 294, popularly known as

---

[1] The proper motion would have been one for summary judgment under GCR 1963, 117. We choose to ignore the technical deficiency in order to reach the more substantive questions.

the no-fault act, took effect. MCLA 500.3101 *et seq.;* MSA 24.13101 *et seq.* One section of the no-fault act, MCLA 500.3172; MSA 24.13172, opened up another possible source of recovery to persons injured by hit-and-run drivers.

"A person entitled to claim because of accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle in this state may obtain *personal protection insurance benefits*[2] through an assigned claims plan if * * * no personal protection insurance applicable to the injury can be identified." (Emphasis supplied.)

The next development was 1974 PA 223, effective July 26, 1974, which amended MCLA 257.1105; MSA 9.2805 by adding the following language.

"This act [and especially MCLA 257.1112; MSA 9.2812 authorizing recovery from the Fund] does not apply to an accident occurring after the effective date of this amendatory act for which benefits are payable in whole or in part under [the no-fault act]."

The plaintiff's accident occurred on May 18, 1975, which was obviously after the effective date of the amendment to MCLA 257.1105; MSA 9.2805. The theory of the defendant's motion for

---

[2] The phrase "personal protection insurance benefits" has a specialized meaning under the no-fault act. It includes practically all medical expenses and significant wage loss and incidental expenses reimbursement; but the term does not include either property damage or elements of damages which were formerly grouped under the phrase "pain and suffering". MCLA 500.3172; MSA 24.13172, is something of a mixed blessing. On the one hand, it makes it possible for persons injured by hit-and-run drivers to recover, without a showing of fault, more than the $20,000 limitation on claims against the Fund. On the other hand, the elements of damages which can be recovered are more limited. Since the pain and suffering elements of this plaintiff's cause of action predominate, he understandably rejects the argument that MCLA 500.3172; MSA 24.13172 is his sole remedy.

accelerated judgment was that the amendment barred plaintiff's action against the Fund since he was entitled to receive benefits "in part" under the no-fault act, MCLA 500.3172; MSA 24.13172. Plaintiff's position was that the amendment only barred a double recovery for personal protection benefits and still permitted recovery of other elements of tort damages from the Fund. Alternatively, plaintiff argued that the whole statutory scheme was unconstitutional on equal protection grounds if the amendment was interpreted in the manner advocated by the defendant. The trial judge agreed with the defendant's interpretation, rejected the plaintiff's constitutional argument and granted accelerated judgment to the defendant. Plaintiff now appeals to this Court.

    I. Does' MCLA 257.1105; MSA 9.2805, as amended, bar recovery from the fund by a person entitled to receive personal protection benefits under MCLA 500.3172; MSA 24.13172?

We affirm the trial court's holding that the amended statute must be read as barring the plaintiff's recovery. The statutory language is clear. Where there is no ambiguity, courts may not disturb the obvious meaning by employing other interpretive devices. *Dussia v Monroe County Employees Retirement System,* 386 Mich 244; 191 NW2d 307 (1971).

There can be no doubt that the Legislature intended, and intends, to gradually phase the Fund out of existence and replace it with the various remedies available under the no-fault act. *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 498; 208 NW2d 469 (1973) (Levin, J., concurring). On May 5, 1971, the Legislature transferred the accumulated assets of the

Fund to the state's general fund. Since that date, the Fund has depended upon annual appropriations by the Legislature which are scheduled to terminate after fiscal year 1978. MCLA 257.1103a; MSA 9.2803(1). After July 26, 1974, the combined effect of MCLA 500.3101; MSA 24.13101 and 1974 PA 223, § 1, meant that the Fund's only "direct" source of revenue was the $45 fees paid by persons registering uninsured motorcycles in this state. Even that small flow of revenue was cut off by 1975 PA 322, § 1. That act further clarified the legislative intent by adding MCLA 257.1133; MSA 9.2833 which states:

"This act [the Fund] does not apply to accidents occurring after [January 2, 1976]."

We hold that the plaintiff is not entitled to recover pain and suffering[3] damages from the Fund. We must now consider the plaintiff's alternative argument that the statute is unconstitutional if so read.

II. Is MCLA 257.1105; MSA 9.2805 unconstitutional on equal protection grounds because it does not allow the persons injured by hit-and-run drivers to sue the state for pain and suffering damages?

In *Manistee Bank & Trust Co v McGowan,* 394

---

[3] Plaintiff actually only asks to be allowed to recover "noneconomic losses" as defined by MCLA 500.3135; MSA 24.13135, *i.e.,* damages for "death, serious impairment of body function or permanent serious disfigurement". However, plaintiff's claim may actually be too modest. The provision limiting tort recoveries to "noneconomic losses", as defined, is a grant of partial immunity which is not available to persons who have illegally failed to purchase no-fault insurance covering their vehicles. Since the legislation creating the Fund treats unidentified drivers in the same manner as uninsured drivers, the plaintiff might advance an argument that he is entitled to the full traditional range of pain and suffering damages.

Mich 655; 232 NW2d 636 (1975), our Supreme Court ruled that Michigan's guest passenger statute was unconstitutional on equal protection grounds. MCLA 257.401; MSA 9.2101; US Const, Am XIV, § 1; Const 1963, art 1, § 2. Writing for the majority, Justice LEVIN offered an extensive analysis of the courts' role in reviewing equal protection challenges to legislation. Traditional learning holds that there are two equal protection tests, application of one or the other depending upon the subject matter of the challenged legislation. In the *Manistee Bank & Trust* case, the Supreme Court appears to have recognized still a third possible test whose application, like the others, depends upon the nature of the legislation under review. Rather than attempt to paraphrase Justice LEVIN's opinion, we have simply borrowed those sections which appear to bear immediate relevance to the present appeal.

"There are two principal problems in judicial review under the Equal Protection Clause: The role of the courts in constitutional adjudication and the test to be applied. The questions of what role and which test are interrelated. The choice of test is frequently determinative of the judicial role.

\* \* \*

"It has been said that 'legislatures exist to decide the wisdom of statutes, courts exist to decide their constitutionality.' That the legislative solution appears undesirable, unfair, unjust or inhumane does not of itself empower a court to override the legislature and substitute its own solution. A legislative classification need not be drawn with 'mathematical nicety', 'rough accommodations—illogical, it may be, and unscientific' will do. Statutes are cloaked with a presumption of constitutional validity. The burden of rebutting that presumption is on the person challenging the statute.

\* \* \*

"[T]he United States Supreme Court developed a two-tiered approach to equal protection cases.

"If the interest is 'fundamental' or the classification 'suspect', the court applies a 'strict scrutiny' test requiring the state to show a 'compelling' interest which justifies the classification. Rarely have courts sustained legislation subjected to this standard of review.

"Other legislation, principally social and economic, is subjected to review under the traditional equal protection test. The burden is on the person challenging the classification to show that it is without reasonable justification. It has been said that "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it'. A classification will stand unless it is shown to be 'essentially arbitrary'. Few statutes have been found so wanting in 'rationality' as to fail to satisfy the 'essentially arbitrary' test.

"It has been noted recently that the United States Supreme Court, under a 'revitalized' traditional equal protection test, has found a number of social and economic statutes unconstitutional.

\* \* \*

"One commentator explains the apparent inconsistency by suggesting that there are really two traditional equal protection standards \* \* \* and 'the test selected will predetermine the result the court will reach'. The \* \* \* 'any conceivable state of facts' standard literally precludes analysis of the classification and will not support a finding of unconstitutionality, while the \* \* \* fair and substantial relation to the object of the legislation' standard invites the court to examine and determine whether the classification bears a real relation to the perceived purposes.

"This Court has employed the fair-and-substantial-relation-to-the-object-of-the-legislation    test,    dubbed 'means scrutiny' by Gunther, in some recent cases where acts of the Legislature have been found unconstitutional. [Citing *Alexander v Detroit,* 392 Mich 30, 35; 219 NW2d 41 (1974), *Fox v Employment Security Commission,* 379 Mich 579, 588; 153 NW2d 644 (1967). (T. M. KAVANAGH, J., Justices BLACK, SOURIS and BRENNAN

concurring.) *Reich v State Highway Department,* 386
Mich 617, 623; 194 NW2d 700 (1972).]

\* \* \*

"Whatever label is attached to the analysis \* \* \* 'the
governing rule is one of reason: The Equal Protection
Clause, like the Due Process Clause, is a guaranty that
controls the reasonableness of governmental action'.
The classification must be a reasonable one, and it must
bear a reasonable relation to the object of the legisla-
tion.

"What is reasonable is in each instance a matter of
judgment. In the final analysis, it is a value judgment
and should be recognized as such. 'Whether the court
*upholds or invalidates* a statute, the court is making
policy, making value judgments.' [Emphasis in 394
Mich.]

"So, too, is the choice of test a matter of judgment. In
my judgment, at least where the challenged statute
carves out a discrete exception to a general rule *and
the statutory exception is no longer experimental,* the
substantial-relation-to-the-object test should be applied.
[Emphasis supplied.]

"Judicial deference to the Legislature is premised in
part upon the perceived need for experimentation, espe-
cially in social and economic matters.

" '[T]he Equal Protection Clause does not require that
a state must choose between attacking every aspect of a
problem or not attacking the problem at all.' " 394
Mich at 665–72. (Footnotes omitted.)

The Supreme Court tested the guest passenger
statute against the "fair-and-substantial-relation-
to-the-object-of-the-legislation" test, but did so af-
ter concluding that the guest passenger statute
was too well seasoned to be entitled to the special
presumptions of validity which are accorded to
experimental legislation. It may be that the Su-
preme Court intends to completely abandon the
traditional equal protection test. However, the
lesson we draw from *Manistee Bank & Trust* is

that the traditional test still applies to experimental legislation. Since our system of no-fault insurance legislation is undeniably still in the experimental stage, we conclude that we must apply the traditional equal protection test in the present case.

Two statements of that test were endorsed by the Supreme Court in *Alexander v Detroit,* 392 Mich 30; 219 NW2d 41 (1974):

"(1) Are the enactment's classifications based on natural distinguishing characteristics and do they bear a reasonable relationship to the object of the legislation? * * * ."

"(a) Are all persons of the same class included and affected alike or are immunities or privileges extended to an arbitrary or unreasonable class while denied to others of like kind?" 392 Mich at 35–36. (Citations omitted.)

See also *Shavers v Attorney General,* 65 Mich App 355; 237 NW2d 325 (1975), *lv granted,* 396 Mich 869 (1976), for its discussion of equal protection challenges to several provisions of the no-fault act.

Our next task is to define the class or classification whose members the plaintiff contends are treated unequally by the challenged statutes. Plaintiff belongs to a class including all those pedestrians who are injured by motor vehicles.[4] Plaintiff says that the Equal Protection Clause is violated because some members of that class can recover—indirectly—from tortfeasors' insurance companies whereas class members like himself

---

[4] The fact that no one in the plaintiff's household owns an insurance policy is irrelevant. A person who owned a no-fault insurance policy but was injured while a pedestrian would face the same dilemma as this plaintiff does. *And see Moore v Secretary of State,* 73 Mich App 299; 251 NW2d 564[2] (1977), released this same date, for the same constitutional result even if the policy includes optional uninsured motorist coverage.

who are injured by uninsured or unidentified persons cannot recover pain and suffering damages unless the state provides funds for that purpose.

It is somewhat unfair to say that the state has "created" discrimination or that it "treats" the plaintiff differently than other persons in his class. In fact, the Legislature has done all in its power to insure that every driver will have insurance and thus a deep pocket for tort plaintiffs to tap.

Still, it remains true that some injured persons have better opportunities for recovery than others do. Assuming, *arguendo,* that the differences in treatment may be attributed to state action, we next must apply the tests set forth in *Alexander v Detroit, supra,* in order to determine whether the challenged statutes are void on equal protection grounds.

*Alexander* first asks whether "the enactment's classifications [are] based on natural distinguishing characteristics and do they bear a reasonable relationship to the object of the legislation?" The key distinguishing characteristic in the present case is whether or not the tortfeasor is insured. Even in the absence of any legislation, important consequences would stem from the presence or absence of insurance. Therefore, we conclude that classification on that basis is "natural". We momentarily reserve decision on the question of whether classification on that basis bears a reasonable relationship to the objects of the legislation.

*Alexander* also asks whether "all persons of the same class [are] included and affected alike or are immunities or privileges extended to an arbitrary or unreasonable class while denied to others of like kind?" This test is similar to the first. We concede that members of the plaintiff's class are not all treated alike. We now proceed to determine

whether the unequal treatment is arbitrary or unreasonable; or, in the language of the first test, whether the unequal treatment bears "a reasonable relationship to the object of the legislation".

The challenged limitation in MCLA 257.1105; MSA 9.2805 seems to have two purposes: (1) To prevent duplicate recoveries for damages and (2) To prevent a potentially unlimited drain on state revenues. Either purpose is facially valid. We now must consider the reasonableness of the method selected to accomplish those purposes.

Is the unequal treatment allowed by the legislation in the present case reasonably related to the stated legislative purposes? That question can best be answered by considering ways in which the present inequality of treatment could be eliminated and then deciding whether any of the possible cures is constitutionally required.

Equality of treatment would be restored if the Legislature eliminated the possibility of tort recovery for all persons. But that approach would not aid the plaintiff and would impede efforts to reach another legislative objective, allowing persons to recover for wrongfully inflicted injuries.

" '[T]he Equal Protection Clause does not require that a state must choose between attacking every aspect of a problem or not attacking the problem at all.' " *Manistee Bank & Trust Co v McGowan, supra* at 672. (Footnote omitted.)

The only other means of redressing the inequality is the one suggested by the plaintiff, *viz.*, the state could volunteer to serve as the defendant when no other defendant can be found or when a known defendant has insufficient resources to satisfy a substantial judgment. The plaintiff says that

this approach is required by the state and Federal constitutions. We must respectfully disagree.

We suspect that the Legislature thought that it was eliminating virtually all tort recoveries when it enacted MCLA 500.3135; MSA 24.13135. If the provision limiting damages to cases of "death, serious impairment of body function or permanent serious disfigurement" had proven to be as formidable an obstacle as at first imagined, the plaintiff would probably have no cause to complain since very few people would be able to recover tort damages even if their defendants turned out to be insured. However, subsequent developments suggest that tort recovery may be had for relatively trivial injuries. See *e.g., McKendrick v Petrucci,* 71 Mich App 220; 247 NW2d 349 (1976). It now appears that the no-fault act may simply have created two lawsuits where there once was only one. Thus, despite the Legislature's efforts, there is some merit to the plaintiff's complaint that he is limited to participating in one of those lawsuits while most wrongfully injured persons are entitled to two.

But we still do not believe that the state is constitutionally required to serve as a defendant of last resort. This is not a situation in which the state is affirmatively giving money to some persons while withholding it from the plaintiff. Contrast *Fox v Employment Security Commission,* 379 Mich 579; 153 NW2d 644 (1967). The plaintiff has the same right to sue his tortfeasor as any other injured person does. The problem is that he does not know whom to sue, and thus turns to the state and demands that it provide a solution.

Were we to hold that the plaintiff may sue the Fund, the consequences of that ruling would be significant. MCLA 257.1123; MSA 9.2823 would

limit the plaintiff's recovery from the Fund to $20,000. But how could we sustain that limitation against a constitutional attack when persons who sue heavily insured defendants may obtain much greater recoveries?

And what of the person unfortunate enough to be injured by a tortfeasor whose insurance policy provides only the statutory minimum liability coverage? Since the state has allowed that tortfeasor to get by with minimal coverage, why should it not be subject to suit to the extent that the injured person's damages exceed the insurance coverage?

Finally, how could we justify allowing potentially huge insurance-funded recoveries in automobile accident cases without also requiring the state to serve as a surrogate defendant in other cases of tortious injury where liability insurance is usually not available?

In the final analysis, we reject the plaintiff's assertion that the state has affirmatively discriminated against him. It is much more accurate to say that the state has made every effort to insure that a private individual or insurance company stands behind the liability of every automobile tortfeasor. Realistically, that effort to insure private coverage could never be completely successful. Where it fails, the state has taken steps to insure that injured persons will recover their economic losses, regardless of fault. But the state has not furnished an absolute guarantee that all persons will be able to recover noneconomic damages, *i.e.,* pain and suffering. While the Legislature is free to volunteer the state's resources to fill that gap, we do not believe that it is constitutionally required to do so.[5]

The judgment below is affirmed.

---

[5] And we would reach the same conclusion even if we tested the legislation against the "substantial-relation-to-the-object" test used in *Manistee Bank & Trust Co v McGowan, supra.*