KOZAK v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

OPINION OF THE COURT

1. INSURANCE—AUTOMOBILES—UNINSURED MOTORIST COVERAGE—
"OTHER INSURANCE" CLAUSE—PYRAMIDING.

An insurer's liability under an uninsured motorist provision
containing an "other insurance" clause in an automobile insur-
ance policy is limited to the amount stated on the face of the
policy; where an insurer issues multiple policies to an insured,
with each policy providing uninsured motorist coverage and
containing an "other insurance" clause, the insured party may
not pyramid his damages, but can recover only the maximum
amount to which he is limited under the "other insurance"
clause.

2. INSURANCE—AUTOMOBILES—UNINSURED MOTORIST COVERAGE—
"OTHER INSURANCE" CLAUSE—EQUITY—PUBLIC POLICY.

An automobile insurance contract containing uninsured motorist
coverage with an "other insurance" clause is enforceable unless
considerations of equity and justice or of public policy dictate
otherwise.

3. INSURANCE—CONTRACTS—COURTS—CONSTRUCTION OF CONTRACTS—
AMBIGUITIES—LIABILITY.

The rights of the parties to an insurance contract, in the absence
of ambiguities, rest on the insurance contract as written; courts
should not indulge in forced construction so as to cast upon an
insurance company liability which it has not assumed.

DISSENT BY N. J. KAUFMAN, J.

4. INSURANCE—CONTRACTS—EQUITY AND JUSTICE.

*A close examination in terms of consideration of equity and*

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 7] 7 Am Jur 2d, Automobile Insurance §§ 200–203.
  44 Am Jur 2d, Insurance §§ 997–1010.
[3] 7 Am Jur 2d, Automobile Insurance §§ 46, 87.
[4, 6] 7 Am Jur 2d, Automobile Insurance § 2.
[5] 17 Am Jur 2d, Contracts §§ 1, 5.

*justice is particularly appropriate in the case of an insurance contract.*

5. CONTRACTS—ADHESION CONTRACTS—COURTS—MEANINGFUL CHOICE.

*Courts have an obligation to give careful scrutiny to provisions in an adhesion-type contract where a consumer is faced with a lack of meaningful choice.*

6. INSURANCE—AUTOMOBILES—CONSTRUCTION OF CONTRACTS—NO-FAULT INSURANCE.

*Automobile insurance contracts, especially no-fault insurance provisions, should be construed against the draftsman, in light of the statutory requirement of no-fault insurance and the favored position of insurance companies.*

7. INSURANCE—AUTOMOBILES—UNINSURED MOTORIST COVERAGE—"OTHER INSURANCE" CLAUSE—PRORATION OF LOSS—ONE INSURER.

*The twofold purpose of the "other insurance" clause in uninsured motorist coverage in automobile insurance policies is (1) to prorate the loss where there are two or more insurers involved, and (2) to fix the limit thereof; therefore, the clause has no meaningful purpose when applied to coverage issued by one company to one insured.*

Appeal from Oakland, Robert L. Templin, J. Submitted June 14, 1977, at Detroit. (Docket No. 30107.) Decided November 25, 1977.

Complaint by Paula S. Kozak against the Detroit Automobile Inter-Insurance Exchange for a declaratory judgment that plaintiff may recover damages exceeding the limits of the uninsured motorist provisions of any one of the three separate insurance policies written by the defendant which extended uninsured motorist coverage to the plaintiff. Judgment for defendant. Plaintiff appeals. Affirmed.

*Spilkin & Shapiro* (by *Jeffrey M. Mallon),* for plaintiff.

*Condit & McGarry, P. C.,* for defendant.

Before: R. M. MAHER, P. J., and N. J. KAUFMAN and F. J. BORCHARD,* JJ.

PER CURIAM. The issue presented for this Court's consideration is whether several uninsured motorist coverages issued by the same insurance company to the same insured may be stacked or pyramided so that uninsured motorist benefits are payable in an amount exceeding the limits of any one of the separate uninsured motorist coverages.

Paula Sue Kozak was injured on October 5, 1974, when the motorcycle on which she was a passenger was struck by an uninsured motorist in Biloxi, Mississippi. The driver of the motorcycle, who was not at fault, was insured but carried no uninsured motorist coverage.

At the time of the accident, plaintiff was a resident of her parents' home in Michigan. Her father owned three automobiles at the time, each of which was insured by defendant. Each of the three policies provided for uninsured motorist coverage in the limits of $20,000/$40,000. Premiums for this coverage, which covered plaintiff in the Biloxi accident, were paid on each policy.

Each of the policies contained an "other insurance" clause which stated:

"6. Other Insurance.

"With respect to bodily injury to an insured sustained while occupying an automobile or through being struck by an uninsured automobile, if such insured is a named insured under other similar insurance available to him, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the Exchange shall not be liable under this coverage for a greater proportion of the applicable limit of liability of this coverage

---

* Circuit judge, sitting on the Court of Appeals by assignment.

than such limit bears to the sum of the applicable limits of liability of this insurance and such other insurance.

"Subject to the foregoing paragraph, if the insured has other similar insurance available to him against a loss covered by this coverage, the Exchange shall not be liable under this coverage, for a greater proportion of such loss than the applicable limit of liability hereunder bears to the total applicable limits of liability of all valid and collectible insurance against such loss."

Plaintiff sought to recover under the uninsured motorist coverage of each of the three policies, claiming that the benefits should be stacked or pyramided entitling her to a total coverage of $60,000. Defendant, claiming that its liability was limited by the "other insurance" clause to a total of $20,000, paid the plaintiff $20,000 by three separate checks, each drawn on a separate policy for one-third of the total amount. Plaintiff filed an action for declaratory judgment which was decided in favor of the defendant. Plaintiff appeals.

In *Horr v Detroit Automobile Inter-Insurance Exchange,* 379 Mich 562; 153 NW2d 655 (1967), the Michigan Supreme Court held that an "other insurance" clause substantially similar to the one in the present case precluded stacking of uninsured motorist benefits between two insurance companies. *Horr* was decided at a time like the present when uninsured motorist coverage was not required. The Court, after finding no statutory or decisional law applicable, attempted to determine the intent of the contracting parties in interpreting the "other insurance" clause. The Court gave the "other insurance" clause its literal meaning and concluded that the maximum combined coverage of the policies was $10,000, which was the limit of liability in both policies. The "other insur-

ance" clause was then used to prorate the coverage between the insurers.

In *Blakeslee v Farm Bureau Mutual Insurance Co of Michigan,* 388 Mich 464; 201 NW2d 786 (1972), the plaintiff was allowed to stack uninsured motorist coverage from two insurance companies. However, the injury in *Blakeslee* occurred after the passage of MCLA 500.3010; MSA 24.13010 (since repealed) which required uninsured motorist coverage. The Court distinguished *Horr* and held that "[i]t would be unconscionable to permit an insurance company offering statutorily required coverage to collect premiums for it with one hand and allow it to take the coverage away with the other by using a self-devised 'other insurance' limitation". 388 Mich at 474.

The issue now before the Court was addressed in *Arminski v United States Fidelity & Guaranty Co,* 23 Mich App 352; 178 NW2d 497 (1970), *leave granted,* October 20, 1970, *appeal dismissed* by order dated June 2, 1971, 384 Mich 769. *Arminski,* like *Horr,* grew out of incidents which occurred before the statutory requirement of uninsured motorist coverage went into effect.

The plaintiff sought to stack two uninsured motorist provisions issued to him in a single contract. This Court found unpersuasive plaintiff's attempt to distinguish *Horr* on the grounds that there was one insurance company charging two premiums in *Arminski.* The Court citing *Horr* gave a literal meaning to the language of the policy and found that defendant's liability was limited to $10,000, which was the limit in each provision.

The rule in Michigan, in accord with *Horr* and *Arminski,* is that the insurer's liability under a policy containing an "other insurance" clause is limited to the amount stated on the face of the

policy. When an insurer issues multiple insurance policies, each providing uninsured motorist coverage and containing an "other insurance" clause, the insured party may not pyramid his damages, but can recover only the maximum amount to which he is limited by the "other insurance" clause.

In the clause involved here, there is no uncertainty or ambiguity. The clause is set forth as part of the insurance contract in clear and understandable terms: if the insured has other similar insurance available to him against a covered loss, the insurer can avoid the effect of cumulative or multiple limits on a single accident by a proration of the amount the insured can recover. This contract is enforceable unless considerations of equity and justice or of public policy dictate otherwise. Unlike *Blakeslee v Farm Bureau Mutual Insurance Company of Michigan, supra,* no such considerations are present here.

It is true that the insured has paid three separate premiums, but it is not true that under the *Horr-Arminski* analysis he is paying the extra amount for nothing. The additional premiums represent payments for the extra risks taken by the insurance company in insuring additional vehicles and were intended as such. This is the clear and plain import of the "other insurance" clause in the policy.

In the absence of ambiguities, the rights of the parties rest on the insurance contract as written. Courts should not indulge in forced construction so as to cast upon the insurance company liability which it has not assumed. See *Topolewski v Detroit Automobile Inter-Insurance Exchange,* 6 Mich App 286; 148 NW2d 906 (1967). The intention manifested by the policy is to limit the insur-

er's liability. Both parties agreed to the provision and we cannot presume to rewrite their contract.

We note that a significant number of other jurisdictions which have considered the question have held that clauses prohibiting the pyramiding of recoveries by limiting them through "other insurance" and similar provisions on a pro rata basis are valid and enforceable. See *Allstate Insurance Co v Shmitka,* 12 Cal App 3d 59; 90 Cal Rptr 399 (1970), *Otto v Allstate Insurance Co,* 2 Ill App 3d 58; 275 NE2d 766 (1971), *Allstate Insurance Co v McHugh,* 124 NJ Super 105; 304 A2d 777 (1973), *aff'd,* 126 NJ Super 458; 315 A2d 423 (1974), *Kennedy v American Hardware Mutual Insurance Co,* 255 Or 425; 467 P2d 963 (1970), *Pacific Indemnity Co v Thompson,* 56 Wash 2d 715; 355 P2d 12 (1960).

We adopt the view of this line of cases and the view of our own Michigan courts in *Horr* and *Arminski.* Accordingly, we hold the "other insurance" clause agreed to by the parties in this case validly prohibits plaintiff from stacking her recoveries under the separate policies issued by the defendant. She is limited to a recovery of $20,000, the maximum liability on any of the three policies.

Affirmed.

N. J. KAUFMAN, J. *(dissenting).* I have no quarrel with the majority's notation that a "contract is enforceable unless considerations of equity and justice or of public policy dictate otherwise". The majority does not dispute that plaintiff's father, an owner of three automobiles, paid three times for uninsured motorist coverage in three different policies of insurance with the same insurer but is not allowed to collect any benefits beyond the face amount of any one policy. Thus, without passing

on the majority's public policy argument, it is still necessary to closely examine the contract in terms of "considerations of equity and justice". Such an examination is particularly appropriate in the case of an insurance contract. In *Zurich Insurance Co v Rombough,* 384 Mich 228, 232–233; 180 NW2d 775 (1970), the Supreme Court quoted California Supreme Court Justice Tobriner with approval from *Gray v Zurich Insurance Co,* 65 Cal 2d 263, 269–270; 54 Cal Rptr 104; 419 P2d 168 (1966):

" 'In interpreting an insurance policy we apply the general principle that doubts as to meaning must be resolved against the insurer and that any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect.

" 'These principles of interpretation of insurance contracts have found new and vivid restatement in the doctrine of the adhesion contract. As this court has held, a contract entered into between two parties of unequal bargaining strength, expressed in the language of a standardized contract, written by the more powerful bargainer to meet its own needs, and offered to the weaker party on a "take it or leave it basis" carries some consequences that extend beyond orthodox implications. Obligations arising from such a contract inure not alone from the consensual transaction but from the relationship of the parties.

" 'Although *courts* have long followed the basic precept that they would look to the words of the contract to find the meaning which the parties expected from them, they *have also applied the doctrine of the adhesion contract to insurance policies, holding that in view of the disparate bargaining status of the parties we must ascertain that meaning of the contract which the insured would reasonably expect.' "* (Emphasis added.)

Clearly, where a consumer is faced with a lack of "meaningful choice", courts have an obligation to give careful scrutiny to assailed provisions in an

adhesion-type contract. See generally, White and Summers, *Uniform Commercial Code,* West Publishing Co, 1972, pp 112–119, 128–130.

Michigan requires that owners of automobiles registered in this state carry no-fault personal protection automobile insurance as a prerequisite to operation. MCLA 500.3101; MSA 24.13101. Uninsured motorist protection is no longer required by law, as MCLA 500.3010; MSA 24.13010 (which mandated uninsured motorist coverage) was repealed by 1972 PA 345. Nevertheless, it is frequently purchased by auto owners in their desire to have full insurance coverage. Commonly, uninsured motorist provisions contain an "other insurance" clause.[1]

The majority has found that the "other insurance" clause is unambiguous. They assert that the clear and plain import of this clause is to limit the risk assumed by the insurer for the additional premiums to insuring additional vehicles. Thus, the intention manifested by the policy is to limit the insurer's liability which they find was agreed to by the parties and should be enforced.

I am not convinced that this was the "meaning of the contract which the insured would reasonably expect". Plaintiff's insurance contract also contains an "exclusions" clause.[2] An examination of the effect of combining the "exclusions" and "other insurance" clauses suggests the possibility of an unconscionable result. To fully protect himself, the insured must retain policies on each automobile owned. Yet, should an accident occur, the insured is limited to the face value of the policy for the vehicle involved. Thus, the insured is

---

[1] The "other insurance" clause is designed to prevent the insured from cumulating recoveries under several different policies.

[2] The "exclusions" clause is designed to limit the liability of an insurer when the insured owns more than one automobile.

paying additional premiums without an increase in the dollar amount of coverage. It may be argued that the effect of such a procedure would be to allow the insurer to stack premiums (a windfall profit, in effect) by extracting more money than necessary to cover a given liability amount, where the insured's damages are greater than the face amount of any one uninsured motorist provision. As this Court should try to avoid unconscionable results, I would construe the contract against the draftsman, especially in light of the statutory requirement of no-fault insurance and the favored position of insurance companies. I therefore dissent. See *Blakeslee v Farm Bureau Mutual Insurance Co of Michigan,* 388 Mich 464; 201 NW2d 786 (1972), *Boettner v State Farm Mutual Insurance Co,* 388 Mich 482; 201 NW2d 795 (1972). If such a result works an injustice to the insurer, it, in contrast to the insured, can always petition the insurance commission for a rate adjustment. An insured has no place to turn for redress.

An additional matter of disagreement arises from the majority's reliance on *Arminski v United States Fidelity & Guaranty Co,* 23 Mich App 352; 178 NW2d 497 (1970), *leave granted,* October 20, 1970, *appeal dismissed* by order dated June 2, 1971, 384 Mich 769. I believe *Arminski* is based on an incorrect reading of the Supreme Court's holding in *Horr v Detroit Automobile Inter-Insurance Exchange,* 379 Mich 562; 153 NW2d 655 (1967).

In *Horr, two insurers were involved* and the "other insurance" clause was used to prorate the coverage between the insurers. In attempting to determine the intent of the contracting parties, the Supreme Court gave a literal meaning to the "other insurance" clause. *Arminski involved a single insurer* and two uninsured motorist provisions contained in a single contract. In *Arminski,*

this Court also gave a literal meaning to the "other insurance" clause but without any consideration of the purpose of that clause or the intent of the contracting parties.

In *United States Automobile Association v Doktor,* 86 Nev 917, 919–920; 478 P2d 583, 584 (1970), the Nevada Supreme Court construed an "other insurance" clause substantially similar to the one in the present case. The Court stated:

"Its purpose is twofold—to prorate the loss and to fix the limit thereof. Obviously, there is no purpose in proration unless the 'other insurance' was written by another company, since that provision is designed to preclude payment of a disproportionate amount of a loss shared with another company. *Deterding v State Farm Mutual Automobile Ins Co* [78 Ill App 2d 29], 222 NE2d 523 * * * (1966); *Safeco Ins Co of America v Robey,* 399 F2d 330 (8 Cir 1968); *Woolston v State Farm Mutual Ins Co,* 306 F Supp 738 (W D Ark 1969); cf *Government Employees Ins Co v Sweet,* 186 So 2d 95 (Fla App, 1966)." (Footnote omitted.)

A similar conclusion was reached by the Illinois Supreme Court in *Glidden v The Farmers Automobile Insurance Association,* 57 Ill 2d 330, 336; 312 NE2d 247, 250 (1974), under facts similar to ours:

"The apparent purpose of 'other insurance' clauses is to make certain that one company does not pay a disproportionate amount of a loss which is to be shared with another company. There is no purpose in proration unless the 'other insurance' is written by another company. The clause has no meaningful purpose when applied to coverage issued by one company to one insured."

See also *Cammel v State Farm Mutual Automobile Insurance Co,* 86 Wash 2d 264; 543 P2d 634 (1975).

Our Supreme Court applied the "other insurance" clause in *Horr* exactly as *Dokter* and *Glidden* suggest.

Thus, since the purpose for the "other insurance" clause is not present in the instant case—because only one insurance company is involved—it should not be used to limit plaintiff's recovery. Logic impels me to disregard *Arminski's* myopic interpretation of the Supreme Court's holding in *Horr.* Therefore, I would reverse the declaratory judgment in favor of defendant and remand for proceedings consistent with this opinion.