SCHIGUR v WEST BEND MUTUAL INSURANCE COMPANY

Oᴘɪɴɪᴏɴ ᴏꜰ ᴛʜᴇ Cᴏᴜʀᴛ

1. Aᴜᴛᴏᴍᴏʙɪʟᴇs—Iɴsᴜʀᴀɴᴄᴇ—Uɴɪɴsᴜʀᴇᴅ Mᴏᴛᴏʀɪsᴛs—Sᴇᴛ-Oꜰꜰ Pʀᴏ-
ᴠɪsɪᴏɴ.

The reduction of an insurer's liability under uninsured motorist
coverage by the amount of whatever payments the insurer
makes under personal protection coverage is proper where a
provision of an automobile insurance policy clearly authorizes
such a reduction.

2. Iɴsᴜʀᴀɴᴄᴇ—Sᴛᴀᴛᴜᴛᴏʀɪʟʏ Rᴇǫᴜɪʀᴇᴅ Pʀᴏᴠɪsɪᴏɴs—Cᴏɴsᴛɪᴛᴜᴛɪᴏɴᴀʟ
Lᴀᴡ—Dᴜᴇ Pʀᴏᴄᴇss—Eǫᴜᴀʟ Pʀᴏᴛᴇᴄᴛɪᴏɴ.

Provisions of an insurance policy that are not statutorily required
do not implicate constitutional guarantees of due process and
equal protection.

Dɪssᴇɴᴛ ʙʏ N. J. Kᴀᴜꜰᴍᴀɴ, J.

3. Iɴsᴜʀᴀɴᴄᴇ—Cᴏɴᴛʀᴀᴄᴛs—Eɴꜰᴏʀᴄᴇᴀʙɪʟɪᴛʏ—Cᴏɴsɪᴅᴇʀᴀᴛɪᴏɴs ᴏꜰ Eǫ-
ᴜɪᴛʏ—Pᴜʙʟɪᴄ Pᴏʟɪᴄʏ.

*An insurance contract is enforceable unless considerations of
equity and justice or of public policy dictate otherwise.*

4. Aᴜᴛᴏᴍᴏʙɪʟᴇs—Iɴsᴜʀᴀɴᴄᴇ—Uɴɪɴsᴜʀᴇᴅ Mᴏᴛᴏʀɪsᴛs—Sᴇᴛ-Oꜰꜰ Pʀᴏ-
ᴠɪsɪᴏɴ.

*An automobile insurance policy provision which authorizes a
reduction in uninsured motorist coverage benefits by the
amount paid by the insurer under personal protection coverage
should not be enforced where the set-off provision is inequitable
and unjust and its implementation leads to an unconscionable
result; the present statutory scheme which allows such set-offs
does not permit all victims to be made whole.*

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 7 Am Jur 2d, Automobile Insurance §§ 135–138.
   20 Am Jur 2d, Counterclaim, Recoupment and Setoff § 2.
[2] 43 Am Jur 2d, Insurance §§ 147, 271, 276.
[3] 43 Am Jur 2d, Insurance §§ 241–245.
   44 Am Jur 2d, Insurance § 1900.

Appeal from Wayne, Richard D. Dunn, J. Submitted June 14, 1977, at Detroit. (Docket No. 31545.) Decided January 5, 1978. Leave to appeal applied for.

Complaint by Melvin D. Schigur against West Bend Mutual Insurance Company for payment under an uninsured motorist provision of an insurance policy for damages for personal injuries suffered by plaintiff when struck by a hit and run driver. Judgment for plaintiff. Defendant appeals. Reversed and remanded.

*Moore, Barr & Kerwin,* for plaintiff.

*Morbach, Cheatham & MacArthur,* for defendant.

Before: R. M. MAHER, P. J., and N. J. KAUFMAN and F. J. BORCHARD,* JJ.

PER CURIAM. Plaintiff, while a pedestrian, was struck by an unidentified hit and run driver on May 18, 1975. He was unsuccessful in an attempt to recover damages for pain and suffering from the Motor Vehicle Accident Claims Fund, MCLA 257.1101 *et seq.;* MSA 9.2801 *et seq. Schigur v Secretary of State,* 73 Mich App 239; 251 NW2d 567 (1977). The present action is against defendant, insurer of plaintiff's Volkswagen, for recovery under uninsured motorist coverage.[1]

The "Family Combination Automobile Policy" plaintiff purchased from defendant included, for a $2 annual premium, $20,000–$40,000 uninsured motorist coverage. Section II of the policy stated:

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The statement in *Schigur v Secretary of State, supra,* that no one in plaintiff's household owned a car, and therefore there was no "no-fault" coverage for plaintiff's injuries, is incorrect.

"In consideration of the insurance afforded under Section 1 of this endorsement [no-fault personal protection coverage] and the adjustment of applicable rates, any amount payable under the Protection Against Uninsured Motorists Coverage shall be reduced by the amount of any personal protection benefits paid or payable under this or any other automobile insurance policy because of bodily injury to an eligible injured person."

Plaintiff sought arbitration of defendant's liability under the uninsured motorist coverage of the policy. The arbitrator found plaintiff entitled to $20,000, specifying also that the award did not include medical payments and wage loss. The court below rejected defendant's claim that any amounts paid as personal protection benefits under the policy could be offset against the arbitrator's award. Somehow, the court thought that to allow the insurer to offset benefits paid for economic losses against an award for noneconomic losses would violate both due process and equal protection. Defendant appeals the judgment below.

We have recently considered, in *American Fidelity Fire Insurance Co v Williams,* 80 Mich App 125; 263 NW2d 311 (1977), the question presented by this appeal. We held that, as authorized by the policy, an insurer could offset against its liability under uninsured motorist coverage any personal protection benefits it paid. None of plaintiff's arguments convince us to decide the present case differently.

As did the insured in *Williams,* plaintiff points to *Michigan Mutual Liability Co v Karsten,* 13 Mich App 46; 163 NW2d 670 (1968), and *Michigan Mutual Liability Co v Mesner,* 2 Mich App 350; 139 NW2d 913 (1966), as support for his argument against offset. His argument based upon the two

cases is no more persuasive than the one rejected in *Williams.*

Plaintiff also argues that *Murray v Ferris,* 74 Mich App 91; 253 NW2d 365 (1977), supports the trial court's decision. *Murray* found that MCLA 500.3116; MSA 24.13116 clearly required that an insured who receives personal protection benefits must repay his insurer from any tort recovery he realizes. *Murray* then held that this statute violated both due process and equal protection.

Provisions of an insurance policy that are not statutorily required do not implicate constitutional guarantees of due process and equal protection. Nevertheless, the similarity between the insurance provision involved here and MCLA 500.3116; MSA 24.13116 indicates that *Murray* may support plaintiff's position. Both the offset provision in the policy and MCLA 500.3116; MSA 24.13116 must be read with MCLA 500.3135; MSA 24.13135 in mind. MCLA 500.3135; MSA 24.13135 severely restricts the ability of a person, injured in a motor vehicle mishap, to maintain an action in tort. Only if there has been death, serious impairment of body function or permanent serious disfigurement does a person remain subject to tort liability for noneconomic loss caused by his ownership, maintenance or use of a motor vehicle. MCLA 500.3135(1); MSA 24.13135(1). Whether or not the person causing the accident is insured, the threshold for liability for noneconomic loss must be met.[2] While an insured

---

[2] This view has not had complete acceptance. The statute has been read to offer no escape from liability for uninsured motorists. In *McKendrick v Petrucci,* 71 Mich App 200; 247 NW2d 349 (1976), this Court rejected an equal protection challenge premised upon the absence of a threshold for liability for noneconomic loss caused by an uninsured motorist. *McKendrick* pointed out that "a reasonable construction of the entire section [MCLA 500.3135; MSA 24.13135] is that in every instance liability for noneconomic loss is limited by the threshold stated in paragraph (1), and that paragraph (2) only concerns the limitation of liability applicable when there is no-fault

motorist is only liable for negligently caused economic loss that is in excess of personal protection benefits payable, MCLA 500.3135(2)(c); MSA 24.13135(2)(c), an uninsured motorist is given no immunity from tort liability for economic loss.[3] Of course, the ability of a person injured in another jurisdiction to invoke the laws of that jurisdiction have not been affected.

When a tort recovery is made, under these restrictions upon liability, MCLA 500.3116; MSA 24.13116 gives an insurer who has paid personal protection benefits a right to reimbursement from the recovery. As *Murray* observed, an insurer who has paid an insured only for economic losses may, under this section, be reimbursed from the insured tort recovery for noneconomic losses.

In *Pelkey v Elsea Realty & Investment Co,* 394 Mich 485; 232 NW2d 154 (1975), the Supreme Court found nothing objectionable with a workmen's compensation carrier's ability to offset an injured employee's recovery for pain and suffering against the carrier's liability for medical treat-

coverage". 71 Mich App at 204. This construction appears preferable in view of the language and structure of the section.

*McKendrick* is limited solely to the issue of meeting the threshold when the loss for which the uninsured motorist is liable is noneconomic. It was not intended to suggest nor do we now state that uninsured motorists cannot be held liable for economic loss. Furthermore, liability for such economic loss is not limited by any threshold question.

[3] An insured is therefore able to recover, under his uninsured motorist coverage, both economic and noneconomic losses. The fact that the arbitrator here limited the award, at plaintiff's ingenious request, to only noneconomic loss cannot serve to negate the policy provision for offset. An automobile owner is not required to agree to a policy provision offsetting personal protection benefits against an award under uninsured motorist coverage. Without such a provision, nothing would seem to be able to prevent an insured from recovering his economic losses under both personal protection coverage and uninsured motorist coverage. Of course, nothing precludes a person from negotiating with an insurance company for uninsured motorist coverage with policy limits higher than those in plaintiff's policy.

ment. The employee had argued that permitting
the carrier to credit a pain and suffering recovery
from a third-party tortfeasor against the amount
of compensation owed violated equal protection
and due process. The Court quickly rejected this
argument.

Although *Murray* attempted to distinguish *Pel-
key,* the distinction offered was not a substantial
one. In view of *Pelkey,* the holding in *Murray* is
questionable. Certainly, the questionable constitu-
tional analysis of MCLA 500.3116; MSA 24.13116
in *Murray* is no reason to disregard the plain
language of contractual provision now before this
Court. To the contrary, the policy provision is not
inconsistent with the approach chosen by the Leg-
islature for compensation of automobile accident
victims.

Reversed and remanded.


N. J. KAUFMAN, J. *(dissenting).* The majority
opinion allows defendant-insurer to set-off benefits
paid to an insured injured by an uninsured motor-
ist for economic damage from an award for none-
conomic damage. I acknowledge that a clause con-
tained in the uninsured motorist provision of the
insurance contract authorizes such a set-off. I fur-
ther acknowledge that the contract is enforceable
unless considerations of equity and justice or of
public policy dictate otherwise. *Kozak v Detroit
Automobile Inter-Insurance Exchange,* 79 Mich
App 777; 262 NW2d 904 (1977). However, I believe
that considerations of equity and justice mandate
that the insurance policy be enforced without the
set-off provision. Accordingly, I dissent.

I believe that the resolution of this case is aided
by an examination of *Murray v Ferris,* 74 Mich
App 91; 253 NW2d 365 (1977). In that case, this

Court held that considerations of due process and equal protection prevented a statute from requiring an injured party to reimburse his insurer for benefits paid for economic losses from a recovery for noneconomic losses. In response, the majority argues that "[p]rovisions of an insurance policy that are not statutorily required do not implicate constitutional guarantees of due process and equal protection". Without passing on the majority's argument, I nevertheless maintain that *Murray's* rationale comports with the standard set forth by this same majority in *Kozak v DAIIE, supra.*

The threshold of my argument is grounded in the simple, and undisputed, maxims regarding the rationale for recovery of damages under no-fault insurance:

"The function of recovery in tort is to make the victim whole. Because of court congestion and delays in settlements and trials, many tort victims suffer undue hardships. In adopting the no-fault personal injury protection provision, the Legislature sought to afford the insured with the security of a prompt and certain recovery of a fixed amount over a fixed time for his out-of-pocket expenses, *i.e.,* medical expenses, lost wages and lost services." 74 Mich App at 95.

The present statutory scheme does not permit all victims to be made whole. The particular provision of the no-fault act under consideration is MCLA 500.3135; MSA 24.13135:

"Sec. 3135. (1) *A person remains subject to tort liability for noneconomic loss* caused by his ownership, maintenance or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function or permanent serious disfigurement.

(2) Notwithstanding any other provision of law, *tort liability* arising from the ownership, maintenance or

use within this state of a motor vehicle with respect to which the security required by subsections (3) and (4) of section 3101 *was in effect is abolished except as to:*

(a) *Intentionally caused harm to persons or property.* Even though a person knows that harm to persons or property is substantially certain to be caused by his act or omission, he does not cause or suffer such harm intentionally if he acts or refrains from acting for the purpose of averting injury to any person, including himself, or for the purpose of averting damage to tangible property.

(b) *Damages for noneconomic loss as provided and limited in subsection (1).*

(c) *Damages for allowable expenses, work loss and survivor's loss* as defined in sections 3107 to 3110 *in excess of the* daily, monthly and 3 year *limitations contained* in those sections. The party liable for damages is entitled to an exemption reducing his liability by the amount of taxes that would have been payable on account of income the injured person would have received if he had not been injured." (Footnotes omitted; emphasis added.)

Under the majority's rationale, an insured can recover all economic loss (to the statutory limits) from the insurer. The insured can also sue the tortfeasor for noneconomic losses. However, the majority concludes that the insurer can then offset the benefits it paid for economic loss against any judgment for noneconomic losses. It is easy to show the harsh results suffered by insureds under the majority's analysis.

To determine the extent of the tortfeasor's potential liability under MCLA 500.3135(2)(c); MSA 24.13135(2)(c), it is first necessary to recover economic loss benefits from the insurer. After such recovery, the insured can sue the tortfeasor under MCLA 500.3135(2); MSA 24.13135(2) for (a) any damages accruing solely from intentional conduct on the part of the tortfeasor; (b) any damages for

noneconomic loss payable under MCLA
500.3135(1); MSA 24.13135(1); and (c), any damages
for economic loss, in excess of the statutory limits.
Payment of those damages, *in addition to* the
payment of economic damages to the policy limits
makes the insured whole. Yet the majority opinion
forces the insured to disgorge part of that whole,
with no recourse to the insured to collect the
amount set off from the tortfeasor—the insured
being limited by MCLA 500.3135(2)(c); MSA
24.13135(2)(c).[1] That violation of the law of dam-
ages leads me to conclude that the setoff provision
is both inequitable and unjust. Its implementation
leads to an unconscionable result.

Thus, as in *American Fidelity Fire Insurance Co
v Williams,* 80 Mich App 125; 263 NW2d 311 (1977)
(KAUFMAN, J., dissenting): "I would 'enforce the
remainder of the contract without the unconscio-
nable clause'; [MCLA 440.2302(1); MSA

---

[1] The majority concedes that "[w]hether or not the person causing
the accident is insured, the threshold for liability for noneconomic
loss must be met". (Footnote omitted.) Then the majority contends
that "[w]hile an insured motorist is only liable for negligently caused
economic loss that is in excess of personal protection benefits payable,
MCLA 500.3135(2)(c); MSA 24.13135(2)(c), an uninsured motorist is
given no immunity from tort liability for economic loss". (Footnote
omitted.)

I retain a bemused puzzlement at the juxtaposition of those two
assertions. I understand the majority's initial concession as MCLA
500.3135(2); MSA 24.13135(2), mentions nothing of an insured-unin-
sured distinction. Therefore, subsection (2)(b) which allows for "[d]am-
ages for noneconomic loss as provided and limited in subsection (1)",
is binding on an insured's ability to collect from either insured or
uninsured tortfeasors.

As subsection (2)(c) was born of the same stock as subsection (2)(b), I
fail to see how that subsection's limitations are somehow lifted as to
an uninsured tortfeasor. Certainly, nothing on the statute's face
would suggest such a distinction. Furthermore, an examination of
MCLA 500.3107–500.3110; MSA 24.13107–24.13110, reveals no sub-
categorization as suggested by the majority.

While the majority's construction might solve some of the problems
attendant to its opinion, I do not believe that this Court, without
something more than wishful thinking, can attribute such an inter-
pretation to the statutory provisions cited above.

19.2302(1)] [²] *i.e.,* I would not enforce the set-off provision and therefore I would affirm the trial court."

---

² The majority opinion in footnote 3 argues "[A]n automobile owner is not required to agree to a policy provision offsetting personal protection benefits against an award under uninsured motorist coverage". That statement, which implies that an automobile owner may bargain away a contract clause such as the one mentioned above ignores the reality of the market place. This Court has found insurance contracts to be "inherently involved in the doctrine of contracts of adhesion". *Arrigo's Fleet Service, Inc v Aetna Life & Casualty Co,* 54 Mich App 482, 487; 221 NW2d 206 (1974), *lv den* 392 Mich 812 (1974), citing *Zurich Insurance Co v Rombough,* 384 Mich 228, 232–233; 180 NW2d 775 (1970).

A more pertinent problem is the fact that plaintiff purchased uninsured motorist coverage for $2 extra where, in reality, its value was far less than the ostensible policy limitation.