WERNER v THE TRAVELERS INDEMNITY COMPANY

OPINION OF THE COURT

1. ARBITRATION AND AWARD—APPEAL AND ERROR—SCOPE OF REVIEW.

Appellate courts accord judgments confirming or vacating arbitration awards a limited scope of review; and award will not be held invalid merely because it is unjust, inadequate, excessive, or contrary to law.

2. ARBITRATION AND AWARD—APPEAL AND ERROR—COURT RULES.

A court's power to vacate an arbitration award is limited by court rule (GCR 1963, 769.9[1]).

3. ARBITRATION AND AWARD—APPEAL AND ERROR—COURT RULES.

The manner in which an appeal from an arbitration award shall be taken is specified by court rule and a defendant is not properly before an appellate court where he failed to pursue his rights according to the terms of the rule (GCR 1963, 769.9).

4. AUTOMOBILES—INSURANCE—PRIMARY INSURANCE—EXCESS INSURANCE—APPORTIONMENT.

An insurance policy issued to the owner of a vehicle involved in an accident with an uninsured vehicle is the primary policy, and the company which issued that policy is liable to a passenger in the insured vehicle to the limits of the policy without apportionment despite the presence of a pro rata clause in the policy, and a policy issued to another party by another company providing uninsured motorist coverage, which covers the injured passenger, is a secondary policy under which that company will be responsible only for the amount of damages which exceed the primary insurer's policy limits.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 4 Am Jur 2d, Appeal and Error §§ 156–158.
    5 Am Jur 2d, Arbitration and Award § 145.
[4] 7 Am Jur 2d, Automobile Insurance § 202.
    Apportionment of liability between automobile liability insurers where one of the policies has an "excess insurance" clause and the other a "proportionate" or "prorata" clause. 76 ALR2d 502.
[5] 44 Am Jur 2d, Insurance § 1417.

CONCURRENCE BY ELLIOTT, J.

5. INSURANCE—APPEAL AND ERROR—DAMAGES—PAYMENT PENDING
    APPEAL.

Appeal should not be allowed in a dispute between two insurance companies about coverage where both acknowledge liability to the plaintiff unless the plaintiff has been paid the damages determined by the tribunal below, subject to one insurer's recovery from the other, if successful on appeal.

Appeal from Wayne, John M. Wise, J. Submitted Division 1 June 10, 1974, at Detroit. (Docket No. 17015.) Decided September 10, 1974.

Complaint by Richard Werner, administrator of the estate of Mary Ellen Werner, deceased, against The Travelers Indemnity Company and The American Fellowship Mutual Insurance Company for payment of an arbitration award. Summary judgment for plaintiff. The American Fellowship Mutual Insurance Company appeals. Affirmed.

*Dice, Sweeney & Sullivan, P. C.* (by *Altero J. Alteri*), for plaintiff.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P. C.* (by *James A. Sullivan*), for defendant The Travelers Indemnity Company.

*Willans, Frisbee & Ryal* (by *Daniel Zolkower*), for defendant The American Fellowship Mutual Insurance Company.

Before: J. H. GILLIS, P. J., and ALLEN and EL-LIOTT,* JJ.

ALLEN, J. Defendant American Fellowship Mutual Insurance Company has appealed from the March 29, 1973 order granting plaintiff's motion

---

* Circuit judge, sitting on the Court of Appeals by assignment.

for summary judgment. GCR 1963, 117.2(3). The trial court ordered Travelers Indemnity Company to pay $652 to plaintiff and ordered defendant to pay $10,000 to plaintiff, contrary to defendant's position that the total award of $10,652 should have been equally prorated between the two insurance companies.

This case arises out of an automobile accident which occurred on December 10, 1966. An automobile owned and operated by Thomas C. Hendren collided with an automobile driven by an uninsured motorist. Plaintiff's decedent, Mary Alice Werner, was a passenger in Hendren's vehicle and was killed as a result of the accident. The Hendren vehicle was insured by American Fellowship Mutual Insurance Company, and that policy provided uninsured motorist coverage pursuant to MCLA 500.3010; MSA 24.13010. Plaintiff was insured by Travelers Indemnity Company, and plaintiff's decedent was an insured party under the uninsured motorist coverage provided in that policy. Each policy had a $10,000 liability limit, the statutorily required minimum amount of coverage. MCLA 500.3010; MSA 24.13010 and MCLA 257.504; MSA 9.2204.

This dispute is based upon the meaning and effect to be given to the applicable portions of the "other insurance" clauses contained in both insurance policies. American Fellowship's clause states:

"*Other insurance.*

&ast; &ast; &ast;

"With respect to bodily injury to an insured while occupying or through being struck by an uninsured automobile, if such insured is a named insured under other similar insurance available to him then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such

other insurance, and the company shall not be liable under this policy for a greater proportion of the applicable limit of liability of this policy than such limit bears to the sum of the applicable limits of liability of this insurance and such other insurance."

The relevant portion of the Travelers' policy is as follows:

*"Other insurance.* With respect to bodily injury to the insured while occupying an automobile not owned by the named insured, the insurance under Part III shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance."

Both policies contained provisions to submit disputed claims to arbitration, and pursuant thereto plaintiff filed a demand for arbitration with the American Arbitration Association against both insurance companies. In the course of the arbitration proceedings, the arbitrator expressed his desire to have the circuit court determine the respective liability of each insurance company. On August 20, 1971, the trial court determined that the first $10,000 of any award should be paid by American Fellowship, and that Travelers would be liable for the excess.

On August 30, 1971, the arbitrator awarded plaintiff $10,000 from American Fellowship, and $652.08 from Travelers. Although the trial court apparently entered a judgment affirming the arbitration award on October 29, 1971, plaintiff filed the instant action in October of 1972, and on March 29, 1973, the trial court granted plaintiff's motion for summary judgment and confirmed the arbitration award. GCR 1963, 117.2(3) and 769.11.

Our Court has noted that there is a "limited scope of review which appellate courts accord judgments confirming or vacating arbitration awards". *Detroit Demolition Corp v Burroughs Corp,* 45 Mich App 72, 79; 205 NW2d 856 (1973). According to 5 Am Jur 2d, Arbitration and Award, § 167, p 643, "An award will not be held invalid under the common law merely because [it is] unjust, inadequate, excessive, or contrary to law". It is further stated that:

"[t]he general rule is that except under power conferred by statute or by the parties, the courts will not correct errors in awards, either directly or through the arbitrators, but will either set the award aside or enforce it." 5 Am Jur 2d, Arbitration and Award, § 188, p 659.

In Michigan, GCR 1963, 769.9(1)(a–d) limits a court's power to vacate an arbitration award. Such an award may only be vacated where:

"(a) The award was procured by corruption, fraud, or other undue means;

(b) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(c) The arbitrators exceeded their powers; or

(d) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing as to prejudice substantially the rights of a party.

But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."

GCR 1963, 769.9(2) provides that an aggrieved party may apply to vacate the arbitration award within 20 days after delivery of a copy of the

award to the applicant or within 20 days after the alleged "corruption, fraud or other undue means" are known or should have been known by the applicant.

Defendant failed to enforce its rights pursuant to the above court rule. Although defendant apparently filed a motion to quash the October 29, 1971 judgment of the circuit court, that motion came more than 60 days after the rendering of the arbitration award. Also, defendant failed to assert that the arbitration award should be vacated pursuant to the grounds set forth above.

5 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 462, noted "[t]he reviewing court is bound by those restrictions of rule 769 which limit the authority of the circuit courts". The above was a comment to GCR 1963, 769.15, which provides that "[a]ppeals shall be taken in the manner and to the same extent as from orders or judgments in civil actions". We do not read this as an expansion of the limited nature of a court's authority to order the vacation of an arbitration award. In light of an appellate court's limited function in a case such as the one at hand, and in conjunction with defendant's failure to pursue its rights according to the terms of GCR 1963, 769.9, we find that defendant's argument is not properly before our Court.

If defendant's argument were properly before us, we would find the trial court correct in ruling that American Fellowship, insurer of the Hendren vehicle, was primarily responsible, up to its statutorily mandated $10,000 policy limit, MCLA 500.3010; MSA 24.13010 and MCLA 257.504; MSA 9.2204, and that Travelers, providing coverage for plaintiff's decedent, was responsible for the amount of plaintiff's damages which exceeded the $10,000

limit. At issue is one of the most frequently occur-
ring conflicts in automobile insurance, namely, the
effect to be given to the "pro rata" clause in
American Fellowship's policy and the "excess in-
surance" clause in the Traveler's policy. 28 ALR3d
551, § 6, p 566. In such a situation, it is generally
held that the policy issued to the owner of the
vehicle (Hendren) involved in the particular acci-
dent at hand is the "primary" policy, and the
company which issued that policy (American Fel-
lowship) is liable to the limits of the policy without
apportionment, despite the presence of a "pro
rata" clause contained in that policy. 28 ALR3d
551, § 6, p 567, fn 12. Thus, the policy providing
"nonownership coverage" (Travelers) is the second-
ary policy, and that company will be responsible
only for the amount of damages which exceed the
primary insurer's policy limits. 7 Am Jur 2d,
Automobile Insurance, § 200, pp 542–543. See also
16 Couch, Insurance (2d Ed), § 62.72, p 519. In
finding that there should be no apportionment of
plaintiff's damages, the trial court followed the
majority rule as expressed in the above authorities
and in 76 ALR2d 502, § 2, p 505.

Relying upon *Blakeslee v Farm Bureau,* 388
Mich 464; 201 NW2d 786 (1972), defendant has
argued that the "other insurance" clauses con-
tained in the two policies at hand are contrary to
the legislative policy of MCLA 500.3010; MSA
24.13010, and that each company should bear an
equal share of plaintiff's damages. Defendant ar-
gues that its "pro rata" clause conflicts with Trav-
elers' "excess" clause and that in such a situation
liability should be apportioned as an equitable
solution to the problem. This has been noted as
the minority rule in 76 ALR2d 502, § 3, p 512; 7
Am Jur 2d, Automobile Insurance, § 202, p 544–

545; and 16 Couch, Insurance (2d Ed), § 62.74, p 520. This is also known as the *"Lamb-Weston"* rule, based upon the decision of *Lamb-Weston Inc v Oregon Auto Ins Co,* 219 Or 110; 341 P2d 110; 76 ALR2d 485 (1959). In effect, defendant argues that the ruling in *Blakeslee, supra,* necessarily forces Michigan to adopt the minority *"Lamb-Weston"* rule.

In the course of its decision, *Blakeslee, supra,* noted that Virginia was one of the jurisdictions in which the "other insurance" clause of an automobile policy was found to be contrary to Virginia's uninsured motorist statute. *Bryant v State Farm Mutual Auto Ins Co,* 205 Va 897; 140 SE2d 817 (1965) was cited for this proposition. 388 Mich 464, 471–472, fn 5. In a case very similar to the one at hand, *Bryant* was distinguished on the grounds that the *Bryant* court was concerned with an insurance company attempting to limit one's recovery to the limit of liability expressed in one policy. It was noted that *Bryant* involved a situation in which the plaintiff had recovered a judgment of $85,000 against the uninsured motorist, and the insurance company had attempted to limit recovery to $10,000. However, in a situation such as the one at hand, where plaintiff's damages do not exceed the total of the limits of the two policies, the excess insurance clause is given effect, and the policy which covers the owner of the vehicle involved in the accident was held to be primarily responsible, and its policy limits had to be exhausted before the excess insurance of the policy covering the passenger "comes into play." *State Farm Mutual Auto Ins Co v United Services Auto Ass'n,* 211 Va 133, 136; 176 SE2d 327, 330–331 (1970). Relying upon the above, we find that it is unnecessary to state that *Blakeslee, supra,* requires the invalidation of the two clauses at issue.

Many of the cases which comprise the minority rule have rejected the contention that a plaintiff may "stack" insurance benefits of two or more policies to satisfy the damage claim. Relying upon the *"Lamb-Weston"* rule, *Thurman v Signal Ins Co,* 260 Or 524, 528; 491 P2d 1002, 1004–1006 (1971), held that a plaintiff-passenger was limited to a total recovery of $10,000, and that each company was to pay $5,000. A similar result was reached in *Russell v Paulson,* 18 Utah 2d 157, 162; 417 P2d 658, 661–662 (1972), *Protective Fire & Casualty Co v Woten,* 186 Neb 212, 217; 181 NW2d 835, 836–838 (1970), and *McCarthy v Preferred Risk Mutual Ins Co,* 454 F2d 393, 395–396 (CA 9, 1972) (interpreting Arizona law). Those decisions, not allowing stacking, were identical to *Horr v Detroit Auto Inter-Ins Exchange,* 379 Mich 562; 153 NW2d 655 (1967). *Blakeslee* distinguished *Horr* on the grounds that it arose previous to the requirements of MCLA 500.3010; MSA 24.13010. 388 Mich 464, 469–470.

*Blakeslee* held that one may stack or "pyramid" recovery until his loss has been satisfied. 388 Mich 464, 475. Relying upon *Blakeslee* and *Boettner v State Farm Mutual Ins,* 388 Mich 482; 201 NW2d 795 (1972), the recent case of *Citizens Mutual Ins Co v Turner,* 53 Mich App 616; 220 NW2d 203 (1974), held that the uninsured motorist coverage found in two insurance policies, both of which contained the $10,000 limit, could be stacked for the injured party's benefit so that she could satisfy her award of $15,500. *Turner* involved two policies issued by the same company, and consequently the court was not called upon to decide how much of the total award was to be paid by each company. However, in view of Michigan's policy favoring the stacking of benefits, we find those cases disallowing stacking unpersuasive.

*Lamb-Weston, Inc, supra,* felt that it was absurd to determine which company should be held to be the primary or secondary insurer, and rejected what it considered to be the "circular reasoning" of the decisions which did so. 219 Or 110, 128; 341 P2d 110, 118–119. Thus, based upon general "equitable principles" the court determined that each company should bear a proportionate share of the loss. 219 Or 110, 129; 341 P2d 110, 119. A similar conclusion was held ,in *Truck Ins Exchange v Torres,* 193 Cal App 2d 483, 488; 14 Cal Rptr 408, 411 (1961).

Many cases have noted that the company which insured the owner of the vehicle involved in the accident should be the primary insurer. *Certified Indemnity Co v Thompson,* — Colo —; 505 P2d 962, 963 (1973). See also *Eggleston v Townsend,* 336 F Supp 1212, 1218–1219 (D Md, 1972) (construing Virginia law), and *Curran v State Auto Mutual Ins Co,* 25 Ohio St 2d 33, 39; 266 NE2d 566, 568–569 (1971), which held, pursuant to Ohio's uninsured motorist statute, which is practically identical to Michigan's, that the company which insured the host-driver was the primary insurer, and that the plaintiff-passenger's insurance company was responsible for the excess amount of loss.

While recognizing that many courts often find that the company insuring the owner of the vehicle involved is primarily responsible, *Continental National American Group v Burleson,* 283 Ala 671, 674; 220 So 2d 611, 614–615 (1969), referred to a previous decision which had indicated that the basic theory of the cases comprising the majority rule:

"is simply that by virtue of the 'excess insurance' clause there is no other 'valid and collectible' insurance

within the meaning of that phrase as used in the 'pro rata' clause."

In the instant case, the phrase "other similar insurance available to him" is used rather than "valid and collectible" insurance in American Fellowship's pro rata clause, but the meaning is the same. Applying the above theory to our problem, we find that the trial court was correct in its determination that American Fellowship would be primarily responsible until its policy limits were· exhausted, and that Travelers would be liable for the excess.

While limiting one's recovery to a total of $10,000, *Russell v Paulson,* 18 Utah 2d 157, 161; 417 P2d 658, 661 (1966), referred to an Iowa decision, *Burcham v Farmers Ins Exchange,* 255 Iowa 69, 73; 121 NW2d 500, 502 (1963), which discussed the majority rule that the excess clause is generally given effect and the company with the pro rata clause in its policy is the primary insurer. *Burcham* stated:

"The basis for so holding is not always clear. It may, however, be justified on what is a rational basis of the intent of the insurance industry in its uses of such clauses to set up order of payment and limit amounts payable to prevent double recovery." 255 Iowa 69, 73; 121 NW2d 500, 502, reprinted at 18 Utah 2d 157, 161; 417 P2d 658, 661.

*Russell, supra,* and *Burcham, supra,* were both concerned with avoiding "double recovery," *i.e.,* they come within that group of cases which adhere to the "anti-stacking" doctrine. While their "anti-stacking" discussion is inapplicable in a jurisdiction committed to the contrary, we feel that the "order of payment" rationale furnishes the Court with another reason for affirming the trial court's

decision. As noted in *Lamb-Weston, Inc, supra,* cases which underlie the majority rule often reached the "primary-secondary" result without clearly stating a reason for such a finding. We find that the "order of payment" theory adds support to the conclusion that the Hendren insurer, American Fellowship, whose policy contained the "pro rata" clause, is primarily responsible, while the "excess" insurer, Travelers, only had to pay plaintiff after American Fellowship had paid $10,000.

Affirmed, costs to appellees.

J. H. GILLIS, P. J., concurred.

ELLIOTT, J. *(concurring).* I concur and join in Judge ALLEN's opinion. My remarks are on a subject that was not briefed or argued.

This appeal involves only a dispute between two insurance companies who disagree about whether the coverage of one is "excess" or "pro-rata". The dispute delayed a determination by an arbitrator, finally made on August 30, 1971, that plaintiff sustained damage of $10,652.08 on December 10, 1966, when his daughter was killed by an uninsured motorist. American Fellowship appeals from a circuit court decision and confirmation of the award, requiring it to pay its limits, plus interest, instead of the one-half that it has claimed it owes. Travelers does not dispute that it owes $652.08 "excess" plus interest at the legal rate.

Although American Fellowship acknowledges liability for $5,325.04, and Travelers admits that it owes $652.08, plaintiff has not received even these amounts nearly eight years after the death of his daughter and fully three years after delayed liquidation of his claim. Interest on the award, at the legal rate of six percent per annum, will be a

fraction of actual interest the plaintiff would pay on borrowed money.

Appeal should not be allowed in a case like this unless the plaintiff has been paid the damages determined by the tribunal below, subject to appellant's recovery from the other insurer if successful on appeal.

An analogous situation occurs when a disabled workman is determined to be entitled to compensation but a dispute exists as to which of his employer's compensation carriers is obliged to pay it.

These situations are the opposite of "interpleader" provided by GCR 1963, 210. I hope our Supreme Court will adopt a just rule that would govern cases of this nature.