AETNA CASUALTY & SURETY COMPANY v BELCHER

Docket No. 77-1665. Submitted February 8, 1978, at Detroit.—Decided May 9, 1978. Leave to appeal applied for.

Frank Belcher was injured while he was a guest passenger in another's automobile when it was struck by an uninsured motorist. Belcher pursued a claim under the uninsured motorist provision of his host's automobile insurance policy and received payment pursuant to an arbitration award. He then sought arbitration with Aetna Casualty & Surety Co. under his own policy which also provided uninsured motorist protection. Aetna sought a declaratory judgment that Belcher was not entitled to recover under its policy and also sought an order restraining arbitration, relying upon an "other insurance" clause in the Aetna policy. The Wayne Circuit Court, James Montante, J., determined that the "other insurance" clause was against public policy at the time of the accident and did not bar arbitration of Belcher's claim. Aetna appeals. *Held:*

The clause in the Aetna policy which bars a claim under the policy's uninsured motorist protection is against public policy expressed in a statute which required insurers to include uninsured motorist protection in automobile insurance policies even though that statute had been repealed at the time of the accident because the legislative intent of that statute, to reduce the number of claims against the Motor Vehicle Accident Claims Fund, was not changed so long as the fund remained vulnerable to claims from persons injured by uninsured motorists. Because the "other insurance" clause is against public policy the defendant may stack the insurance policies and may arbitrate his claim against Aetna.

Affirmed.

R. M. MAHER, J., dissents, and would hold that the public policy represented by the statute requiring uninsured motorist coverage ceased with the repeal of the statute regardless of the

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4] 7 Am Jur 2d, Automobile Insurance §§ 135–138, 202, 203.
[2] Am Jur 2d, New Topic Service, No-Fault Insurance §§ 4, 8, 11, 18.
[3] 7 Am Jur 2d, Automobile Insurance § 135.

fact that the Motor Vehicle Accident Claims Fund remained vulnerable to claims, and that, therefore, the "other insurance" clause in the Aetna policy is valid and enforceable.

OPINION OF THE COURT

1. AUTOMOBILES—INSURANCE—UNINSURED MOTORISTS—STATUTES— OTHER INSURANCE CLAUSES.

A former statute which required uninsured motorist protection in automobile insurance policies was enacted for the purpose of protecting the Motor Vehicle Accident Claims Fund by reducing the number of claims against the fund; the repeal of that statute did not necessarily indicate a change in the validity of "other insurance" clauses in automobile policies while the fund itself was still vulnerable to claims (MCL 500.3010; MSA 24.13010).

2. AUTOMOBILES—INSURANCE—UNINSURED MOTORISTS—STATUTES— STACKING POLICIES.

A party who was injured by an uninsured motorist while a guest passenger in another's automobile at a time when a statute requiring uninsured motorist protection in automobile policies had been repealed but when the Motor Vehicle Accident Claims Act was still in effect and who has recovered an amount from the host driver's insurer may stack the uninsured motorist coverage of his own automobile policy and may have his claim against his own insurer arbitrated; his recovery is limited to the amount of his loss less the amount previously recovered under the host driver's policy, or his own policy's limit (MCL 500.3010; MSA 24.13010).

DISSENT BY R. M. MAHER, J.

3. AUTOMOBILES—INSURANCE—UNINSURED MOTORISTS—STATUTES.

*The fact that the Motor Vehicle Accident Claims Fund remained in effect after repeal of a statute which required uninsured motorists protection in automobile insurance policies has no significance in a case where the claimant was injured after the repeal of that statute because the public policy supporting that statute ceased when the statute was repealed (MCL 500.3010; MSA 24.13010).*

4. AUTOMOBILES—INSURANCE—UNINSURED MOTORISTS—OTHER INSURANCE CLAUSE.

*There is no public policy which dictates that "other insurance" clauses regarding uninsured motorist protection in automobile*

*insurance policies should be declared invalid where there is no statutory requirement that uninsured motorist protection be offered; an "other insurance" clause in a policy, which bars recovery by an insured where other insurance covers the loss, is valid and enforceable.*

*Collins & Einhorn, P. C.,* for plaintiff.

*Goldstein, Meklir & Feldman, P. C.,* for defendant.

Before: M. J. KELLY, P. J., and T. M. BURNS and R. M. MAHER, JJ.

T. M. BURNS, J. The issue in this case is whether a guest passenger who was injured in an accident involving an uninsured motorist on April 11, 1974, and has been paid $18,000 after arbitration by the host driver's insurance company under an uninsured motorist provision in that policy, is barred by an "other insurance" clause in his own policy from seeking arbitration against his own insurer. On the facts of this case, the trial court held he was not, and we agree.

Belcher was injured on April 11, 1974, while a guest passenger in an automobile driven by Harold Lowrey when Lowrey's automobile was struck by an uninsured motorist. Three other individuals were riding with Lowrey and were also injured. The injured individuals filed claims with Lowrey's insurer under the uninsured motorist provision in Lowrey's policy and ultimately submitted them to arbitration. The arbitration of Belcher's claim resulted in an award of $18,000. There has been no showing that this recovery fully compensated Belcher for the injuries he received in the accident. See, *Detroit Automobile Inter-Insurance Exchange v Pulig,* 80 Mich App 288; 263 NW2d 52 (1977).

After Belcher received payment from Lowrey's insurer, he sought arbitration with Aetna under his own policy which also provided uninsured motorist protection. Aetna filed this action for declaratory relief and to restrain arbitration. The trial court determined that the "other insurance" clause which Aetna relied upon was against public policy at the time of the accident and, therefore, not a bar to arbitration. Aetna appealed to this Court.

The paragraphs of the policies upon which Aetna relies provide:

"With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under the uninsured motorists coverage shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability in this insurance and such other insurance, and Aetna Casualty shall not be liable for a greater proportion of any loss to which this Uninsured Motorists Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."[1]

There are at least three possible theories which

---

[1] If the clause does not prevent Belcher from arbitrating his claim against Aetna, it would still make this policy only a secondary source of recovery without apportionment. That is, Lowrey's policy is primarily liable up to the limit stated therein and this policy acts as excess insurance up to the total amount of the insured's loss. *See* discussion in *Werner v Traveler's Indemnity Co,* 55 Mich App 390, 395–396; 222 NW2d 254 (1974).

would allow Belcher to arbitrate, to some extent, Aetna's liability even in the face of this clause.

First, the "other insurance available" clause could be construed to mean actually available for payment to Belcher. In this case, others were also injured in the accident, which may have resulted in the "each occurrence" limit being exhausted before the individuals were fully compensated. If this is true, the stated policy limit of $20,000 per individual was not actually available to Belcher. See, Anno: *Uninsured Motorist Insurance: Validity and Construction of "Other Insurance" Provisions,* 28 ALR3d 551, § 5. Here, that would mean the parties would arbitrate over a maximum of $2,000.

Second, the court could find the clause unconscionable because it has the effect of providing no coverage where, as here, the insured has paid a premium for protection of himself[2] against uninsured motorists and is injured while a passenger in a car with similar coverage. This theory has gained some favor in this Court. *Detroit Automobile Inter-Insurance Exchange v Curl,* 82 Mich App 140; 266 NW2d 479 (1978), *Kozak v Detroit Automobile Inter-Insurance Exchange,* 79 Mich App 777, 783; 262 NW2d 904 (1977) (N. J. KAUFMAN, J. dissenting.) Application of this theory may seem particularly appealing where the primary recovery came from an insurer who had received no premium from the injured person, thus freeing the insurer who has received a premium from any liability if the clause is enforced as written.

A third theory, the one adopted by the trial

---

[2] Uninsured motorist coverage applies to people, not automobiles and provides protection wherever an insured happens to be and no matter what he happens to be doing, unless a valid exclusion applies. *See, Hickman v Community Service Insurance Co,* 78 Mich App 1; 259 NW2d 367 (1977), *Bradley v Mid-Century Insurance Co,* 78 Mich App 67; 259 NW2d 378 (1977), *Ellis v State Farm Insurance Co,* 78 Mich App 189; 259 NW2d 421 (1977).

court in this case, is that the provision is against public policy. For purposes of this case, we accept this narrower ground for imposing liability.

At the time of this accident, April 11, 1974, the provisions of the insurance code requiring uninsured motorist coverage in each policy of insurance delivered in this state, MCL 500.3010; MSA 24.13010[3], had already been repealed by 1972 PA 345. However, the Motor Vehicle Accident Claims Act, MCL 257.1101 *et seq.;* MSA 9.2801 *et seq.,* was still in effect and applicable to this incident.[4] Under this act, persons injured by negligent uninsured motorists in this state are allowed to recover for their injuries, up to a specified sum, from a fund created by the act.

The purpose of requiring uninsured motorist protection as provided in former § 3010 was to protect the fund by reducing the number of claims against it. *Collins v Motorists Mutual Insurance Co,* 36 Mich App 424, 433; 194 NW2d 148 (1971), *lv den,* 388 Mich 812 (1972) (Judge, now Justice, LEVIN, concurring). The trial court found that the repeal of § 3010 did not necessarily indicate a change in the validity of other insurance clauses while the fund was still vulnerable. We agree.

The legislative intent to protect the fund continues as long as the fund is vulnerable to claims from persons injured by uninsured motorists. See

---

[3] There is no doubt that while § 3010 was in effect the clause in question here would not prevent stacking. *Blakeslee v Farm Bureau Mutual Insurance Company of Michigan,* 388 Mich 464, 474–475; 201 NW2d 786 (1972).

[4] By express provision, the act does not apply to accidents after the effective date of 1975 PA 322. MCL 257.1133; MSA 9.2833.

The Legislature also amended § 5 of the act, MCL 257.1105; MSA 9.2805, by adding the last two sentences of that provision by 1974 PA 223 which became effective July 26, 1974. The amendments to § 5 made the act inapplicable to some situations where "no-fault" benefits are available.

Neither of these amendments are applicable to this case.

note 4. Therefore, Belcher will be allowed to stack the policies and arbitrate his claim against Aetna. The amount recoverable is, of course, limited to the amount of his loss less the amount previously recovered under Lowrey's policy, or the policy limit. *Cf., Blakeslee v Farm Bureau Mutual Insurance Company of Michigan,* 388 Mich 464, 474–475; 201 NW2d 786 (1972).

Aetna relies on two Michigan Supreme Court cases which have approved this type of provision when former § 3010 was not applicable, in arguing the result suggested here is improper. These cases may be distinguished from the present situation.

In *Horr v Detroit Automobile Inter-Insurance Exchange,* 379 Mich 562, 566; 153 NW2d 655 (1967), the Court stated:

"We find no statutory or decisional law of this State applicable in 1963 to the insurance clauses requiring our interpretation and the parties assert there were none. Consequently, our task is limited to determining the intent of the contracting parties."

There is a statute, the Motor Vehicle Accident Claims Act, applicable in this case. It is also noted that the result reached in *Horr* was to prorate the loss between the two insurers. Aetna is not claiming the loss should be prorated, it is claiming it has no liability at all.

*Rowland v Detroit Automobile Inter-Insurance Exchange,* 388 Mich 476; 201 NW2d 792 (1972), may also be distinguished. The defendant in *Rowland* had issued both of the policies involved in that case. Here, two insurers are involved. The Court did not rely on the "other insurance" clause as Aetna does here, but on an exclusion contained in the policy which specifically stated the insurance provided by the policy did not apply if the

injury occurred while the insured was occupying a
nonowned automobile which had similar coverage.
The exclusion applied and was enforced as written.

Perhaps more significant to our analysis here is
the fact that the policy in *Rowland* was issued on
September 25, 1965. This was before the effective
date of § 3010 and that section was held not to
apply even though the accident occurred after the
effective date of the act. The Supreme Court did
not discuss the Motor Vehicle Accident Claims Act
in *Rowland,* but we note the policy in issue there
was also issued before the effective date of that
act. MCL 257.1131; MSA 9.2831.

Thus, the Motor Vehicle Accident Claims Act
was not a factor in the Supreme Court's determi-
nation in either *Horr* or *Rowland,* and neither was
the policy of protecting the fund. As stated above,
that policy continues even after the repeal of
§ 3010. The cases referred to by Aetna do not
control this situation.

Affirmed. Costs to appellee.

M. J. KELLY, P. J., concurred.

R. M. MAHER, J. *(dissenting).* On April 11, 1974,
Frank Belcher was injured in an accident caused
by an uninsured motorist who hit the car in which
Belcher was a passenger. From his host driver's
insurance company, Belcher collected $18,000. He
then filed a demand for arbitration with his own
insurance company, Aetna.

Aetna filed a complaint for declaratory judg-
ment and a request for a temporary restraining
order, based upon its contention that the "other
insurance" clause in Belcher's policy prevented
Belcher from instituting a claim as to Aetna. On
November 3, 1976, Aetna filed a motion for sum-
mary judgment. The trial court found that the

other insurance clause violated public policy since, at the time of the accident, the Motor Vehicle Accident Claims Act was still in effect. Summary judgment was granted in favor of Belcher on April 22, 1977. The court was thus allowing defendant Belcher to stack uninsured motorist benefits from two policies issued by different insurance companies.

In 1965, the Michigan Legislature passed MCL 500.3010; MSA 24.13010, which required uninsured motorist coverage. The purpose of MCL 500.3010 was to protect the Motor Vehicle Accident Claims Fund from liability when uninsured motorist coverage was available. *Blakeslee v Farm Bureau Mutual Insurance Company of Michigan,* 388 Mich 464; 201 NW2d 786 (1972).

MCL 500.3010 was repealed on October 1, 1973 by the enactment of the no-fault act, MCL 500.3101 *et seq.,* MSA 24.13101 *et seq.,* though the Motor Vehicle Accident Claims Fund was allowed to remain in effect until July 26, 1974. It was during this interim period that Belcher sustained his injuries.

That the Motor Vehicle Accident Claims Fund remained in effect for a period after MCL 500.3010 was repealed is not significant to the outcome of this case. The public policy with which the trial court concerns itself ceased with the repeal of MCL 500.3010.

In those cases in which the courts have found "other insurance" clauses invalid because they violated public policy, MCL 500.3010 was in effect. See, *e.g., Blakeslee v Farm Bureau Mutual Insurance Company of Michigan, supra.* The objection to other insurance clauses has clearly been on the basis of statutory illegality—this was the public policy considered by the courts.

In *Rowland v Detroit Automobile Inter-Insurance Exchange,* 388 Mich 476; 201 NW2d 792 (1972), a case reported at the same time as *Blakeslee,* the Court chose to enforce the "other insurance" clause because, it found, the statute was not controlling. The insurance policy containing the clause had been issued before the effective date of the statute.

*Rowland,* therefore, did not consider any public policy considerations other than statutory illegality, such as claims against the uninsured motorist fund, which did exist at the time of the injury in *Rowland.* Any public policy arguments made were based on and originated solely from the statute. See Tierney, *Insurance,* 20 Wayne L Rev 471, 478 (1974).

"Other insurance" clauses have been specifically approved by our courts in times, like the present, when uninsured motorist coverage was not required. In *Horr v Detroit Automobile Inter-Insurance Exchange,* 379 Mich 562; 153 NW2d 655 (1967), the Michigan Supreme Court held that an "other insurance" clause precluded stacking of uninsured motorist benefits between two insurance companies. After finding no statutory or decisional law applicable, the Court attempted to determine the intent of the contracting parties in interpreting the "other insurance" clause. The Court gave the "other insurance" clause its literal meaning and used it to prorate the coverage between the two insurers.

*Horr* was followed by *Arminski v United States Fidelity & Guaranty Co,* 23 Mich App 352; 178 NW2d 497 (1970), in which plaintiff was not allowed to stack two uninsured motorist provisions issued to him in a single policy. *Arminski,* like *Horr,* grew out of incidents which occurred before

the statutory requirement of uninsured motorist coverage went into effect.

In *Kozak v Detroit Automobile Inter-Insurance Exchange,* 79 Mich App 777; 262 NW2d 904 (1977), the injuries occurred after the repeal of MCL 500.3010. *Kozak,* it must be noted, relied upon the law as it existed before the enactment of MCL 500.3010 *(i.e., Horr* and *Arminski).* In *Kozak,* the Court prohibited an insured from pyramiding his damages by stacking uninsured motorist coverage from multiple insurance policies issued by a single insurer. The Court found no considerations of public policy, such as existed by reason of the statute in *Blakeslee.*

I conclude, therefore, that when, as in *Rowland, Horr, Arminski* and *Kozak,* MCL 500.3010, which requires uninsured motorist coverage, is not in effect, there is no public policy which dictates that "other insurance" clauses be declared invalid. In cases arising out of pre-MCL 500.3010 situations *(Rowland, Horr, Arminski)* and in cases after the repeal of § 3010 *(Kozak,* which looked for guidance to pre-§ 3010 law), the courts have found other insurance clauses are enforceable. I, too, find the "other insurance" clause in defendant's Aetna policy to be valid and enforceable.