MICHIGAN MILLERS MUTUAL INSURANCE COMPANY v
ADAMS

Docket No. 77-4036. Submitted May 2, 1978, at Lansing.—Decided
June 20, 1978. Leave to appeal applied for.

Sheila Adams was killed when the car in which she was riding,
owned and operated by John W. Chi, collided with an unin-
sured vehicle. Mr. Chi had automobile liability insurance with
Allstate Insurance Company. Allstate paid the policy limit of
$20,000 to the estate of Sheila Adams under that policy. Sheila
Adams was also covered for injury caused by an uninsured
motorist under a policy issued by Michigan Millers Mutual
Insurance Company to her daughter. The limit of liability
under the provisions of the contract with Michigan Millers was
$40,000. The estate of Sheila Adams filed a claim against
Michigan Millers. Michigan Millers then commenced an action
for a declaratory judgment and for a determination of the
rights of the parties under the policy issued by plaintiff. Plain-
tiff alleged that its liability was only $20,000, because of an
"other insurance" provision containing an excess insurance
clause in the insurance contract. Summary judgment for plain-
tiff, Ingham Circuit Court, Michael G. Harrison, J. Defendant
appeals. *Held:*

The defendant is limited to a total recovery under the two
insurance policies of $40,000 because the excess insurance
clause in the Michigan Miller's policy is clear and unambiguous
in its applicability to the facts of the case and, therefore, the

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Automobile Insurance §§ 201, 202.

Apportionment of liability between automobile liability insurers
one or more of whose policies provide against any liability if
there is other insurance. 46 ALR2d 1163.

Apportionment of liability between liability insurers each of whose
policies provides that it shall be "excess" insurance. 69 ALR2d
1122.

Apportionment of liability between automobile liability insurers
where one of the policies has an "excessive insurance" clause and
the other a "proportionment" or "pro rata" clause. 76 ALR2d
502.

[2] 44 Am Jur 2d, Insurance §§ 1815, 1817.

rights of the parties must rest on the insurance contract as written.

Affirmed.

D. E. HOLBROOK, J., dissented. He would hold that since separate premiums had been paid for uninsured motorist coverage of $20,000 and $40,000, the recovery should not be limited by an "excess insurance" clause in an "other insurance" provision where the parties have stipulated that the damages exceed $60,000. The estate should be allowed to recover $40,000 from Michigan Millers. He would reverse.

### OPINION OF THE COURT

1. AUTOMOBILES—INSURANCE—EXCESS INSURANCE—RIGHTS OF PARTIES.

The rights of the parties to an automobile liability insurance contract, as provided in an "excess insurance" clause in the contract, must rest on the contract as written where that clause is clear and unambiguous.

### DISSENT BY D. E. HOLBROOK, J.

2. INSURANCE—PREMIUMS—OTHER INSURANCE CLAUSE—LIMITING COVERAGE.

It is unconscionable to allow an insurance company to collect premiums for coverage on the one hand and on the other hand use an "other insurance" clause to take the coverage away.

*Willingham, Cote, Hanslovsky, Griffith & Foresman, P. C.* (by *Marianne E. Samper*), for plaintiff.

*Dunnings and Canady, P. C.,* for defendant.

Before: J. H. GILLIS, P. J., and D. E. HOLBROOK and N. J. KAUFMAN, JJ.

PER CURIAM. Defendant appeals by right from the entry of summary judgment for plaintiff on October 5, 1977.

Plaintiff filed a complaint for declaratory judgment on November 8, 1976, seeking a declaration of rights and obligations of the parties under a

policy issued by plaintiff to defendant. The follow-
ing stipulated statement of facts was agreed upon
by the parties:

"This cause arises out of an automobile accident
which occurred on May 10, 1975 at 9:00 p.m. in the City
of Lansing at the intersection of Cedar Street and
Pennsylvania Avenue. At that time and place defend-
ant's decedent Sheila Adams was a passenger in an
automobile owned and operated by John W. Chi, which
was proceeding north on Pennsylvania Avenue when a
pick-up truck turned left from southbound Cedar Street
directly into the path of the Chi car. A collision be-
tween the to [sic] vehicles resulted in which both John
W. Chi and Sheila Adams were killed.

"Subsequent investigation revealed that the pick-up
truck driver was uninsured. Mr. Chi had automobile
liability insurance with Allstate Insurance Company
and Sheila Adams was covered for injury caused by an
uninsured motorist under a policy issued by plaintiff
Michigan Millers to Mrs. Adams' daughter.

"Pursuant to the provisions of the Allstate Insurance
Company policy the Estate of Sheila Adams received
their policy limit of $20,000. The Estate also filed a
claim with Michigan Millers under the uninsured mo-
torist provisions of their policy. The limit of liability
under that provision is set at $40,000 by the terms of
the insurance contract.

"There is a provision of the Michigan Millers policy
which plaintiff contends causes Michigan Millers to be
liable for only the difference between the limit of liabil-
ity and any amount paid by any other insurance com-
pany which in this case would total $20,000. Defendant
Adams disputes the meaning and validity of the policy
provision and claims to be entitled to the limit of
liability of $40,000. Plaintiff Michigan Millers has in
fact offered defendant $20,000 in settlement of the
claim which defendant has rejected.

"It is stipulated between the parties that the damages
resulting from the death of Sheila Adams when consid-
ering her employment, life expectancy and role as a
mother and wife would exceed $60,000. The sole dispute

in this matter is as to the validity and interpretation of the contractual provision of the insurance policy."

Resolution of this case is dependent upon the construction given to the "excess insurance" clause of the "other insurance" provision of the insured's policy.

The "other insurance" provision of the Michigan Millers policy issued to defendant's decedent's daughter provides as follows:

"Other Insurance: If the insured has other insurance against a loss to which the Liability Coverage applies or other automobile insurance affording benefits for medical expenses against a loss to which the Medical Expense Coverage applies, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute or non-owned automobile shall be excess insurance over any other valid and collectible insurance and if the insured has other excess or contingent insurance applicable to loss arising out of the use of a temporary substitute or non-owned automobile, the company shall not be liable under this policy for a greater proportion of such loss than the amount which would have been payable under this policy, had no such other insurance existed, bears to the sum of said amount and the amounts which would have been payable under each other policy applicable to such loss, had each such policy been the only policy so applicable.

"With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under the Uninsured Motorists Coverage shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount

by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Uninsured Motorists Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

It is the second paragraph which sets forth the "excess insurance" clause:

"With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under the Uninsured Motorists Coverage shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance."

Faced with a similar factual situation, in *Horr v Detroit Automobile Inter-Ins Exchange,* 379 Mich 562, 566–567; 153 NW2d 655 (1967), the Supreme Court concluded:

"We find no statutory or decisional law of this State applicable in 1963 to the insurance clauses requiring our interpretation and the parties assert there were none. Consequently, our task is limited to determining the intent of the contracting parties.

" * * * The trouble with plaintiff's reliance upon the quoted language is that its context clearly discloses that it was intended to apply only to the determination of each insurer's *pro rata* share of maximum combined

coverage, 'the damages' referred to in both policy clauses.

"Before that determination can be made, other language identical in both policies, 'the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance', must be applied to determine the maximum combined coverage of the policies. Giving this language its literal meaning compels the conclusion that the maximum combined coverage of these policies is $10,000, since that sum is the stated limit of liability in both policies."

This case does not present a "stacking" problem such as that found in, *e.g., Kozak v Detroit Automobile Inter-Ins Exchange,* 79 Mich App 777; 262 NW2d 904 (1977). This case does not involve a single insurer issuing multiple insurance policies. Thus, as in *Horr, supra,* a literal meaning may be given to the clause in question.

We hold that the "excess insurance" clause in the contested policy is clear and unambiguous in its applicability to the facts of this case; and, because of the absence of ambiguity in the "excess insurance" clause, we hold that the rights of the parties must rest on the insurance contract as written. The order of summary judgment is therefore affirmed.

We note, in passing, that defendant's argument to the effect that plaintiff should pay a greater pro rata share than Allstate is beyond the scope of this appeal. Defendant is limited to a total recovery of $40,000.

Affirmed.

D. E. Holbrook, J. *(dissenting).* This writer respectfully dissents from my learned brothers' majority opinion.

The instant case involved two separate insurance policies issued by Allstate Insurance Com-

pany and Michigan Millers Mutual Insurance Company. Allstate insured Mr. Chi, the driver of the car in which defendant's decedent was a passenger. The premium paid by Mr. Chi provided $20,000 in uninsured motorist coverage. Decedent's estate was paid $20,000 by Allstate. Decedent was also covered under a policy her daughter had with Michigan Millers. The premium paid by decedent's daughter provided $40,000 in uninsured motorist coverage. Decedent's estate was offered $20,000 in full settlement by Michigan Millers even though plaintiff's damages exceeded $60,000. This offer was refused. Michigan Millers asserts that the "excess insurance" clause of the "other insurance" provision of the policy prevents defendant from recovering any additional monies.

This writer feels that it is unconscionable to allow an insurance company to collect premiums for coverage on one hand and on the other hand to use the "other insurance" clause to take the coverage away. Under the facts in the instant case, the other insurance clause violates public policy.

In *Sipes v McGhee*, 316 Mich 614, 623–624; 25 NW2d 638 (1947), the Court gave a definitive meaning to the term public policy:

"[T]his Court adopted the meaning of public policy from *Pittsburgh, C. C. & St. L. R. Co. v. Kinney*, 95 Ohio St. 64 (115 N.E. 505, L.R.A. 1917 D, 641, 643, Ann. Cas. 1918 B, 286):

" ' "What is the meaning of 'public policy?' A correct definition, at once concise and comprehensive, of the words 'public policy,' has not yet been formulated by our courts. Indeed, the term is as difficult to define with accuracy as the word 'fraud' or the term 'public welfare.' In substance, it may be said to be the community common sense and common conscience, extended and applied throughout the State to matters of public morals, public health, public safety, public welfare, and the

like. It is that general and well-settled public opinion relating to man's plain, palpable duty to his fellow men, having due regard to all the circumstances of each particular relation and situation.

" ' "Sometimes such public policy is declared by Constitution; sometimes by statute; sometimes by judicial decision. More often, however, it abides only in the customs and conventions of the people,—in their clear consciousness and conviction of what is naturally and inherently just and right between man and man. It regards the primary principles of equity and justice and is sometimes expressed under the title of social and industrial justice, as it is conceived by our body politic. When a course of conduct is cruel or shocking to the average man's conception of justice, such course of conduct must be held to be obviously contrary to public policy, though such policy has never been so written in the bond, whether it be Constitution, statute or decree of court. It has frequently been said that such public policy is a composite of constitutional provisions, statutes and judicial decisions, and some courts have gone so far as to hold that it is limited to these. The obvious fallacy of such a conclusion is quite apparent from the most superficial examination. When a contract is contrary to some provision of the Constitution, we say it is prohibited by the Constitution, not by public policy. When a contract is contrary to statute, we say it is prohibited by a statute, not by a public policy. When a contract is contrary to a settled line of judicial decisions, we say it is prohibited by the law of the land, but we do not say it is contrary to public policy. Public policy is the cornerstone—the foundation—of all constitutions, statutes, and judicial decisions, and its latitude and longitude, its height and its depth, greater than any or all of them. If this be not true, whence came the first judicial decision on matter of public policy? There was no precedent for it, else it would not have been the first." ' "

See also, *People, ex rel Attorney General v Koscot Interplanetary, Inc,.* 37 Mich App 447, 479–480; 195 NW2d 43 (1972), *lv den,* 387 Mich 765 (1972).

There is nothing naturally and inherently just and right in a case where individuals have paid separate premiums for uninsured coverage of $20,-000 and $40,000, yet are only able to recover $40,000 even though damages exceed $60,000.

This writer would rule that public policy requires that the primary principle of unconscionability and justice requires that the estate be allowed to recover $40,000 in uninsured coverage from Michigan Millers inasmuch as the premium paid was for $40,000 worth of coverage, and plaintiff's damages exceeded $60,000. This conclusion is fortified by *Aetna Casualty & Surety Co v Belcher,* 83 Mich App 175; 268 NW2d 335 (1978).

In *Blakeslee v Farm Bureau Mutual Ins Co of Michigan,* 388 Mich 464, 474; 201 NW2d 786 (1972), and *Boettner v State Farm Mutual Ins Co,* 388 Mich 482, 487–488; 201 NW2d 795 (1972), Mr. Justice Williams, writing for a unanimous Court, stated:

"It would be unconscionable to permit an insurance company offering statutorily-required coverage to collect premiums for it with one hand and allow it to take the coverage away with the other by using a self-devised 'other insurance' limitation."

Although Mr. Justice Williams spoke about "statutorily-required coverage", which is not the situation in the instant case, the tenor of his statement applies to the case at bar. It is unconscionable to allow an insurance company to collect premiums for coverage on one hand and on the other hand use the "other insurance" clause to take the coverage away.

This position which allows recovery in the case at bar finds support in other jurisdictions.

In *Robinson v Allstate Ins Co,* 267 So 2d 257 (La

App, 1972), a guest passenger in a vehicle, which was involved in an accident with an uninsured motorist, was allowed to "stack" uninsured motorist coverage of $5,000 provided under his host driver's policy with coverage under a policy he carried on his own personal vehicle. See also, *Deane v McGee,* 261 La 686; 260 So 2d 669 (1972), *Graham v American Casualty Co of Reading, Pennsylvania,* 261 La 85; 259 So 2d 22 (1972), wherein the Courts held that multiple uninsured motorist coverages, for which separate premiums are charged, afford insurance for limits up to the cumulated "stacked" total of all coverages.

In *Werley v United Services Automobile Ass'n,* 498 P2d 112, 118 (Alas, 1972), the Court stated as follows:

"The court also specifically rejected the insurer's argument that plaintiff should not be permitted to 'stack' benefits under several policies. The court saw nothing wrong with stacking benefits. It was persuaded by the argument that both insureds had purchased policies directly benefiting the passenger. *Since both companies had collected premiums for this protection, there could be no injustice in permitting recovery to the limits of both policies."* (Emphasis added.)

See, *Lamb-Weston, Inc v Oregon Automobile Ins Co,* 219 Or 110; 341 P2d 110 (1959), *reh den,* 219 Or 110; 346 P2d 643 (1959).

In the case of *Cunningham v Ins Co of North America,* 213 Va 72, 77; 189 SE2d 832 (1972), the Court wrote:

"The purpose of uninsured motorist insurance is to provide compensation to the innocent victim of the uninsured motorist. The named insured in a policy receives coverage, and a contract benefit, for which he

has paid a consideration. *He seeks indemnity based on the payment of that premium and where he has paid separate premiums he is entitled to the additional coverages.*" (Emphasis added.)

In the instant case, the decedent's estate should be allowed to recover $40,000 from Michigan Millers. To hold otherwise provides an unjust result.

This writer votes to reverse, with costs to defendant.